960 So.2d 158 (2007)
Jules MOITY
v.
FIREFIGHTERS' RETIREMENT SYSTEM.
No. 2006 CA 0775.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*160 Richard A. Tonry, Michael C. Ginart, Kim C. Jones, Cullen A. Tonry, Chalmette, Daniel A. Claitor, Baton Rouge, Counsel for Plaintiff/Appellee Jules Moity.
Steven S. Stockstill, Baton Rouge, Counsel for Defendant/Appellant Firefighters' Retirement System.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
McCLENDON, J.
This appeal challenges a district court's reversal of a decision of the Firefighters' Retirement System denying an application for disability retirement. We amend the judgment, and affirm as amended.

BACKGROUND
The record reflects that in 1976, when he was thirteen years old, Jules Moity was involved in a motorcycle accident and, as a result, fractured his right hip. He underwent surgery in which pins were inserted and later removed. Approximately fifteen years later, in 1991, Mr. Moity was hired as a firefighter by the St. Bernard Parish Fire Department. He passed a pre-employment physical examination on February 20, 1991. The report of that examination contains a notation of the 1976 right hip fracture and resulting surgery. On March 4, 1991, Mr. Moity applied for membership in the Firefighters' Retirement System (FRS). His application for membership was approved by FRS' Board of Trustees (Board) on June 28, 1991.
Mr. Moity performed the requirements of his job as a firefighter until December 10, 2003; however, he exhausted all of his sick and annual leave by December 31, 2004. On January 15, 2004, at the request of his employer, Mr. Moity underwent an orthopedic evaluation performed by Dr. Robert Ruel, Jr. According to Dr. Ruel's report, x-rays obtained that day revealed a severe deformity of the right femoral head of the right hip with disalignment, severe joint space narrowing and severe arthritic changes. Dr. Ruel diagnosed Mr. Moity as suffering from severe arthritis, post-traumatic right hip, and noted the probability that Mr. Moity will require a total hip replacement surgery in the future to alleviate his arthritic pain. Dr. Ruel opined that Mr. Moity was unable to carry out his firefighting duties with the hip in its present condition. He also noted that Mr. Moity had a chemical dependency on pain medication, which Dr. Ruel described as a disability in itself and one that prevented Mr. Moity from being an operator. Dr. Ruel felt that Mr. Moity was capable of doing sedentary to light duty jobs at the fire station.
In April of 2004, Mr. Moity applied to the FRS for disability retirement. He claimed in his application that he suffered from degenerative hip disease that resulted from the physical demands of being a firefighter over the course of his employment. In connection with the application, Mr. Moity submitted medical records of his treatment for hip pain by Dr. Kenneth Adatto and Dr. John Watermeier. Dr. Adatto's 2002 report reflected that Mr. Moity has end-stage arthritis of the hip, which he treated with anti-inflammatory and pain medications.
On May 12, 2004, Danny Menesses, the Chief Administrative Officer for the St. Bernard Parish government, wrote a letter to the FRS to offer these facts: (1) at the *161 time Mr. Moity was hired by the parish, he passed a comprehensive, pre-employment physical examination performed by the parish's medical staff; (2) Mr. Moity made full disclosure of the motorcycle accident that left him with the right hip fracture and some residual discomfort in that joint; however, that injury did not affect Mr. Moity's job performance or training for a number of years; (3) it was the opinion of outside medical specialists that the rigors and physical stress of the firefighter position led to the deterioration of his right hip; and (4) Mr. Moity maintained an exemplary working record for the parish and was well respected by his peers.
On October 14, 2004, at the request of FRS, Mr. Moity was evaluated by Dr. Larry Ferachi, an orthopedist who was FRS' appointed physician to the State Medical Disability Board. Dr. Ferachi stated that x-rays revealed advanced osteoarthritic changes of the right hip, with a complete collapse of the femoral head and no joint space maintained. Dr. Ferachi opined that Mr. Moity has advanced osteoarthritis of his right hip secondary to the 1976 traumatic fracture, end-stage arthritis, and is in need of a total hip arthroplasty. Given these physical findings, the doctor stated, Mr. Moity is unable to return to any type of employment as a firefighter.
Shortly thereafter, FRS sent Dr. Ferachi a letter requesting clarification of preexisting disability status. Dr. Ferachi was asked whether, based on the medical records he reviewed and his October 14, 2004 examination, Mr. Moity's advanced osteoarthritis of his right hip was a result of the 1976 motorcycle accident and resulting right hip fracture. The question was followed with spaces to answer "Yes" and "No." Dr. Ferachi checked both the yes and no spaces, commenting, "Read the report!!" Dr. Ferachi wrote that the fracture was the primary cause of Mr. Moity's advanced osteoarthritis of the right hip, but that the stress and habits of a firefighter increased the risk to develop osteoarthritis of the hip.
At its November 18, 2004 regularly scheduled monthly business meeting, the Board considered Mr. Moity's disability retirement application. Dr. Ferachi's report was presented to the Board, along with the statutory language on preexisting conditions found in La. R.S. 11:216. That provision reads as follows: "[a]ny disability claimed by a member of a state or statewide retirement system must have been incurred after commencement of service in the system with which the claim is filed. Disability claims shall not be honored in the case of preexisting conditions." Thereafter, the Board denied Mr. Moity's application, notifying Mr. Moity of its decision by letter dated November 23, 2004. Therein, FRS Benefit Analyst Jason Starns noted that after reviewing the evidence and based upon Dr. Ferachi's report, it was determined that the medical condition upon which Mr. Moity based his claim for disability was a preexisting condition for which disability retirement benefits were not available in light of La. R.S. 11:216.
On November 29, 2004, Mr. Moity notified FRS that he intended to appeal the decision of the Board. Pursuant to La. R.S. 11:218, FRS arranged for Mr. Moity to be examined by Dr. Thad Broussard, a second State Medical Disability Board doctor. In a letter to Dr. Broussard, the FRS benefit analyst sought assistance on the question of causation, stressing that the Board was focusing on whether Mr. Moity's right hip condition preexisted his membership in FRS. The question posed to Dr. Broussard by FRS was whether Mr. Moity's right hip condition arose before or *162 after the date of his membership in FRS (March 4, 1991).
In a second opinion rendered by Dr. Broussard on December 21, 2004, Dr. Broussard noted that x-rays taken in his office showed severe osteoarthritic changes with deformity of the hip. He opined that Mr. Moity could not continue to work in any way as a firefighter with his hip in its present condition. Regarding the question of causation, in his report, Dr. Broussard wrote:
I do not, however, believe that these changes in the hip are solely the result of his activities as a fire fighter. I believe that the hip fracture most likely began this degenerative process, and in the course of his duties as a fire fighter and placing more stress across the hip joint in that position that ultimately resulted in the joint that he now has. I do not believe, based on the patient's history, that he was disabled before he joined the fire fighting system, but certainly had pre-existing trauma that was aggravated during the course of his employment, which subsequently has lead [sic] to his disabled condition at this time.
On January 13, 2005, the Board considered Mr. Moity's appeal, and the reports of Drs. Ferachi and Broussard were presented. The Board voted to uphold its previous decision and denied benefits upon finding that Mr. Moity's degenerative hip condition was caused by the pre-employment accident. In so doing, the Board observed that it was adhering to the opinions of the State Medical Disability Board doctors. The Board notified Mr. Moity of its decision by letter dated January 14, 2005, stating therein that it was determined that the medical condition for which he based his claim for a disability retirement was a preexisting condition.
On February 7, 2005, Mr. Moity filed this petition for judicial review of the FRS' denial of his claim for disability retirement benefits. The district court held that the Board's ruling was unreasonable, arbitrary and capricious, and was manifestly erroneous under the facts of the case. The court stressed that both of the State Medical Disability Board doctors acknowledged the prior hip injury, but found that the trauma Mr. Moity was exposed to during his years as a firefighter disabled his hip. The court also stressed that the fracture for which the Board denied benefits occurred 27 years prior to Mr. Moity's current disabling condition, that the fracture had healed, and that Mr. Moity easily passed his pre-employment physical. Moreover, the court observed, in denying benefits the Board failed to consider the physical demands on Mr. Moity in his job or his exemplary service as a fireman. The district court ordered the Board to pay Mr. Moity his "job related disability benefits."
This appeal, taken by FRS, followed.[1] Mr. Moity answered the appeal, urging that even if the Board correctly found that he had a preexisting condition, he is still entitled to retirement benefits pursuant to La. R.S. 11:2258(B).

DISCUSSION
At the outset, the parties debate the appropriate standard of judicial review governing the Board's determination of Mr. Moity's disability status. Mr. Moity urges that the judicial review provision of the Louisiana Administrative Procedure *163 Act (LAPA) applies, pursuant to which the district court owed no deference to the Board's ruling and was authorized to make its own determination by a preponderance of the evidence. La. R.S. 49:964(G)(6). FRS contends that the LAPA does not govern the scope of judicial review of the Board's ruling because there has been no "adjudication" as that term is defined in the LAPA. FRS submits that the traditional standard of review accorded to administrative decisions applies in this case, which limits a court to determining whether the agency action was unreasonable, arbitrary and capricious, or whether it amounted to an abuse of discretion.
We agree with FRS's position. Judicial review is available under the LAPA only when there is a "final decision or order in an adjudication proceeding." La. R.S. 49:964(A). The LAPA defines an "adjudication" as an "agency process for the formulation of a decision or order." La. R.S. 49:951(1). A "decision" or "order" is defined in the LAPA as "the final disposition ... of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing...." La. R.S. 49:951(3).
It is well settled that an "adjudication" for the purpose of the LAPA means an agency proceeding that results in a disposition that is required to be made, by constitution or statute, after notice is given and a hearing is held. Delta Bank & Trust Company v. Lassiter, 383 So.2d 330, 333 (La.1980). Thus, unless some statute or the constitution requires a hearing, an agency action is not an adjudication for the purpose of the LAPA. Id.; Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, XXXX-XXXX, p. 9 n. 7 (La.10/16/01), 797 So.2d 656, 662 n. 7; Government Computer Sales, Inc. v. State through Division of Administration, 98-0224, p. 5 (La.App. 1 Cir. 9/25/98), 720 So.2d 53, 56.
There has been no showing that the Board is constitutionally or statutorily required to hold a hearing for the benefit of a disability retirement applicant. Moreover, no adjudication proceeding was, in fact, conducted before the Board in connection with Mr. Moity's disability retirement application. Therefore, we find that there was no "adjudication" by the Board so as to trigger the applicability of the LAPA's judicial review provision. However, it is well settled that the right of judicial review of administrative proceedings is presumed to exist. Delta Bank & Trust Company, 383 So.2d at 335. The scope of review of administrative agencies in the performance of a discretionary duty is restricted to a determination of whether the agency's action can be deemed to have been unreasonable, arbitrary or capricious, or whether it amounted to an abuse of power. Delta Bank & Trust Company, 383 So.2d at 335. See also Gibson v. Firefighters' Retirement System, XXXX-XXXX, p. 2 n. 1 (La.App. 1 Cir. 6/21/02), 822 So.2d 98, 99 n. 1 (finding a disability determination by the Firefighters' Retirement System's Board of Trustees was in error under this lesser standard of review, and pretermitting whether the LAPA applied.)
Employing the proper standard of review, we nevertheless find that the Board was unreasonable and arbitrary in finding that Mr. Moity is not entitled to disability retirement under La. R.S. 11:215 and La. R.S. 11:2258(B). Louisiana Revised Statutes 11:215(A), provides as follows:
A member who becomes disabled, and who files for disability benefits while in service, and who upon medical examination and certification as provided for elsewhere in this Subpart, is found to be *164 totally disabled solely as the result of injuries sustained in the performance of his official duties, or for any cause, provided the member has at least five years of creditable service and provided that the disability was incurred while the member was an active contributing member in active service, shall be entitled to disability benefits under the provisions of R.S. 11:2258(B). (Emphasis added).
Louisiana Revised Statutes 11:2258(B)(1)(c) & (d) provide for the following disability retirements:
(c) Any member who is totally disabled from an injury received in the line of duty, even though the member may have less than five years of creditable service, shall be paid, on a monthly basis, an annual pension of sixty percent of the average final compensation being received at the time of disability.
(d) Any member of the system who has become disabled or incapacitated because of a continued illness or as a result of any injury received, even though not in the line of duty, and who has five years of creditable service, but is not eligible for retirement under the provision of R.S. 11:2256 may apply for retirement under the provision of this Section and shall be retired on seventy-five percent of the retirement salary to which he would be entitled under R.S. 11:2256 if he were eligible thereunder or twenty-five percent of the member's average salary, whichever is greater.
Read in conjunction, these provisions set forth two types of service-connected disability retirements: (1) an "in the line of duty" benefit for a disability resulting solely from injuries sustained in the performance of the employee's official duties (La. R.S. 11:215 and La. R.S. 11:2258(B)(1)(c)); and (2) a benefit for disabilities because of a "continued illness" or as a result of an injury received outside the line of duty, despite the cause thereof, provided that the disability was incurred while the member was an active contributing member in active service (La. R.S. 11:215 and La. R.S. 11:2258(B)(1)(d)).
In Guillory v. State Police Retirement Board, 402 So.2d 161 (La.App. 1 Cir.), writ denied, 404 So.2d 1260 (La.1981), involving the retirement provisions at issue, the court distinguished between "in the line of duty" disability retirement and a disability retirement because of a "continued illness." As in the present case, the percentage of salary at which a disabled police officer retired differed considerably depending on whether the disability was "in the line of duty" or resulted from a "continued illness."[2] At issue before this court was whether a state police officer, whose heart condition was aggravated over a period of many years, partly as a result of his employment as a police officer, was entitled to a disability retirement as one who sustained an injury "in the line of duty" or as one who was disabled as a result of a "continued illness." The court held that a serious heart disease, aggravated over a period of many years, partly as a result of the performance of one's work, constituted a "continued illness." In reaching this conclusion, this court set forth the following test to determine whether a disability constitutes an "injury" or a "continued illness":
There must be a cut-off point, however, at which an injury is so insubstantially, slowly or imperceptibly received or sustained *165 as a result of the employment that it is not an "injury" in and of itself, but a "continued illness." An aggravation of a preexisting condition in cases of more precipitous development of the illness falls under [La. R.S. 40:1428](B)(2) as an "injury", and in cases in which the development was more gradual and less directly related to employment (or not related at all) falls under [La. R.S. 40:1428](B)(3) as a "continued illness".
Guillory, 402 So.2d at 163.
Considering the facts of this case, the district court clearly was correct in finding that Mr. Moity is entitled to service-connected disability retirement benefits. Two physicians, when questioned by the Board on the issue of causation, certified that Mr. Moity's advanced osteoarthritis of his hip resulted in part because of the rigors of his job as a firefighter, and that the preexisting trauma to his hip was aggravated over the course of his employment, which subsequently led to Mr. Moity's present disabled condition. Dr. Broussard attested that Mr. Moity's disabled condition did not pre-date his employment. Therefore, based on the specific facts and medical evidence presented in this case, the Board erroneously applied La. R.S. 11:216 to deny Mr. Moity disability retirement benefits. Because Mr. Moity's disability occurred during the time he was actively employed as a firefighter, he is entitled to a service-connected disability retirement under La. R.S. 11:215 and La. R.S. 11:2258(B).
Although we agree that the district court correctly ordered FRS to pay Mr. Moity disability benefits, the district court did not determine the type of disability benefit to which Mr. Moity is entitled. The district court merely stated that Mr. Moity was entitled to "job related disability benefits"; however, benefits under either La. R.S. 11:2258(B)(1)(c) or (d) could be "job related." We find no need to remand the case to the district court to clarify the judgment. The evidence established that one of the causes of Mr. Moity's disabling hip condition was an old fracture that did not occur in the line of duty. Moreover, his disabling hip condition developed gradually over a 14-year period. The combination of the preexisting degenerative process caused by the old fracture and the demands of his job led to Mr. Moity's disabling condition. Under these circumstances, we find that Mr. Moity's degenerative hip disease is a "continued illness" for which he is entitled to a disability retirement under La. R.S. 11:2258(B)(1)(d). Accordingly, FRS is ordered to pay Mr. Moity disability retirement benefits in accordance with this provision.

CONCLUSION
For the foregoing reasons, the judgment appealed from is amended to order FRS to pay Mr. Moity disability retirement benefits under La. R.S. 11:215 and La. R.S. 11:2258(B)(1)(d). As amended, the judgment is affirmed. All costs of this appeal, in the amount of $455.84, are assessed to appellant, Firefighters' Retirement System.
AMENDED AND AS AMENDED, AFFIRMED.
GUIDRY, J., concurs in the result.
NOTES
[1] The first judgment signed by the district court did not contain appropriate decretal language concerning Mr. Moity's claim. In response to a show cause order issued by this court, an amended judgment was signed by the district court that rendered judgment in favor of Mr. Moity and against FRS, ordering FRS to pay Mr. Moity his job-related disability benefits. Thereafter, this court maintained the appeal.
[2] Mr. Moity's estimated benefit amount for a "job related" disability is $1,725.45, as opposed to a "non-job related" maximum of $993.02 and minimum of $718.94.