VICTORY, J.
 
 *
 

 LWe granted this writ application to determine if the lower courts properly interpreted the laws governing disability benefits for firefighters in determining that the plaintiff in this case, Sherron Bowers (“Bowers”), was only entitled to non-job related disability benefits under La. R.S. ll:2258(B)(l)(d). After reviewing the record and the applicable law, we reverse the judgment of the court of appeal and hold that Bowers is entitled to job related disability benefits under La. R.S. ll:2258(B)(l)(c).
 

 FACTS AND PROCEDURAL HISTORY
 

 The facts underlying this case are not in dispute. Bowers was hired by Caddo Fire District #4 on March 26, 1991 as a firefighter/operator, later becoming Fire Captain. While so employed, Bowers was a member of the Firefighters’ Retirement System (the “FRS”). Bowers took sick leave on May 1, 2003, as a result of a medical condition known as genitourinary prolapse of the female organs.
 
 [1]
 
 She applied for ^disability retirement benefits on February 19, 2004. In compliance with FRS procedures, she submitted to a medical examination by the State Medical Disability Board physician. Dr. Payne issued a report stating that Bowers could not
 
 *175
 
 return to her current job because of the heavy lifting involved with that job. As to the cause of her disability, he stated as follows:
 

 These conditions most often have a genetic component, and tend to be common in thin, Caucasian females. However, chronic activity, such as heavy lifting, or chronic coughing, secondary to a smoking habit, could contribute to genitourinary prolapse. Her history of two vaginal deliveries has also contributed to the initial condition. It is impossible to discern which percentage of genetics, vaginal deliveries, or heavy lifting contributed to her prolapse. It is reasonable to conclude that many years of heavy lifting would have worsened this condition. * * *
 

 In conclusion, I feel that the combination of genetic factors, history of vaginal deliveries, and the chronic nature of heavy lifting that her job entailed at the Fire Department, all contributed to her history of genitourinary prolapse. As stated above, it is hard to determine which percentage each contributed. However, I do feel that it is fair to assume that since her problem arose well after the date of March 26, 1991, that heavy lifting associated with her job would have made a significant contribution.
 

 The FRS asked Dr. Payne to clarify his comments as to the cause of Bowers’ genitourinary prolapse. He then issued a second report, stating as follows:
 

 As I stated in my previous examination and conclusion, I feel that it is a combination of genetic factors, history of vaginal deliveries, and the chronic nature of her job description that have contributed in the past to her genitourinary prolapse and are certainly a threat to the success of surgery to correct that in the future. While it is difficult to assign a percentage to these different factors, as far as causation, it is certainly not recommended that she continue in her current job description, as this would result in almost certain failure of her successful surgery today. While the patient may have had a genetic predisposition to genitourinary prolapse, I can state with confidence that, without having had two vaginal deliveries or the chronic heavy lifting of her job description, this condition would almost certainly not have revealed itself.
 

 laDuring its April 13, 2004 meeting, the Board of Trustees of the FRS (the “Board”) found that plaintiffs physical disability was not casually related to the physical requirements of her job and denied her job related disability retirement benefits. However, the Board allowed her non-job related disability benefits, which were approximately $860.00 per month less than the job related benefits would have been.
 

 After Bowers sought reconsideration of the Board’s determination, on October 27, 2004, Dr. Payne’s deposition was taken, wherein he testified that Bowers was, in fact, a thin, Caucasian female which genetically predisposed her to this condition. He further classified his opinion that prior vaginal deliveries were a factor in contributing to her condition as a “theory” and that there was no way to determine whether she would have had the prolapse without the heavy lifting associated with her job. However, he agreed that it was reasonable to assume that, because she did not suffer a prolapse until 12 years after her employment and she was asymptomatic until the heavy lifting associated with her job, that the heavy lifting was the “trigger” of her prolapse. After considering this additional evidence, the Board affirmed its prior decision by maintaining non-job related benefits.
 

 
 *176
 
 Bowers disagreed and filed suit, alleging that the Board’s decision was arbitrary and capricious, amounted to an abuse of discretion, and constituted discrimination based on plaintiffs “gender-related circumstances.” Bowers filed an affidavit with attached exhibits, attesting to the following:
 

 During work hours, I was the only firefighter operator and responded alone. Also, I was responsible for all station duties: cutting grass, maintaining tools and appliances in trucks. I would lift a push lawnmower into the back of a salvage truck to move it to the substation, mow and reload it myself.... In the month prior to May 1, 2003,1 responded to several different types of calls, such as motor vehicle accidents, grass fires, a fatality accident with disentanglement of victims and medical emergencies where lifting, caring for and patient loading of different weights and sizes was involved. Attached to this affidavit and marked as Exhibit A is a letter from Fire Chief Bryant Williams. Also 14attached as Exhibit B is a list of tools, appliances and weights that I used and lifted during my employment. I have undergone several employment physical examinations including one in 1995 after a knee injury and a promotional examination when I was promoted to firefighter Captain in June of 1999. I passed all my physical examinations until May 1, 2003.
 

 The trial judge ruled in favor of the FRS, ruling that the Board’s decision was not arbitrary and capricious and was properly based on Dr. Payne’s opinion that the disability was caused by “a confluence of factors,” and not solely on injuries sustained in the performance of her official duties. The trial judge also rejected Bowers’ claim of discrimination, finding that in order to be discriminatory, the Board would have to conclude that the female condition is an invalid disabling medical condition, but that “[ijnstead the Board recognized the unique female disorder as a disabling condition and confined its analysis as to whether or not her occupation caused the prolapse.” The court of appeal affirmed the trial court’s judgment.
 
 Bowers v. Firefighters’ Retirement System,
 
 06-2386 (La.App. 1 Cir. 9/19/07), 963 So.2d 1106 (unpublished). We granted the plaintiffs writ application.
 
 Bowers v. Firefighters’ Retirement System,
 
 08-1268 (La.10/03/08), 992 So.2d 997.
 
 [2]
 

 DISCUSSION
 

 The scope of review of administrative agencies in the performance of a discretionary duty is restricted to a determination of whether the agency’s action can be deemed to have been unreasonable, arbitrary or capricious, or whether it amounted to an abuse of power.
 
 Delta Bank & Trust Company v. Lassiter,
 
 383 So.2d 330 (La.1980). “Arbitrary and capricious” means the absence of a rational basis for the action taken.
 
 Bannister v. Department of Streets,
 
 05-404 (La.1/16/96), 666 So.2d 641. Under the arbitrary and capricious standard, an agency decision is entitled to deference in its interpretation of its own rules and regulations; however, it is not entitled to |deference in its interpretation of statutes and judicial decisions.
 
 Entergy Louisiana, LLC v. Louisiana Public Service Com’n,
 
 08-0284 (La.7/01/08), 990 So.2d 716, 723.
 

 The Board and the lower courts found that because Dr. Payne’s report showed three factors contributed to Bowers’ genitourinary prolapse, i.e., genetic predisposi
 
 *177
 
 tion (she was a thin, Caucasian female), two vaginal deliveries at least 25 years prior, and heavy lifting associated with her job, her disability was not caused solely as a result of injuries sustained in the performance of her official duties. Therefore, she was not entitled to job related disability under the relevant statutes. We now review those statutes to determine whether the Board and the lower courts properly interpreted those statutes.
 

 La. R.S. 11:215(A) is determinative of whether a firefighter is eligible for disability benefits, providing as follows:
 

 A.
 
 A member who becomes disabled,
 
 and who files for disability benefits while in service, and who upon medical examination and certification as provided for elsewhere in this Subpart,
 
 is found to be totally disabled solely as the result of injuries sustained in the performance of his official duties, or for any cause, provided the member has at least five years of creditable service
 
 and provided that the disability was incurred while the member was an active contributing member in active service,
 
 shall be entitled to disability benefits under the provisions of R.S. 11:2258(B).
 
 (Emphasis added.)
 

 La. R.S. 11:2258(B) then determines which type of disability benefits the firefighter will be entitled to: job related benefits which are payable at a higher rate, or non-job related benefits, payable at a lower rate. La. R.S. 11:2258(B)(1) provides in part:
 

 (c) Any member
 
 who is totally disabled from an injury received in the line of duty,
 
 even though the member may have less than five years of creditable service,
 
 shall be paid, on a monthly basis, an annual
 
 |
 
 6pension of sixty percent of the average final compensation
 
 being received at the time of disability.
 

 (d) Any member of the system
 
 who has become disabled or incapacitated because of continued illness or as a result of any injury received, even though not in the line of duty,
 
 and
 
 who has five years of creditable service,
 
 but is not eligible for retirement under the provisions of R.S. 11:2256 may apply for retirement under the provisions of this Section and shall be retired on seventy-five percent of the retirement salary to which he would be entitled under R.S. 11:2256 if he were eligible thereunder or
 
 twenty-five percent of the member’s average salary,
 
 whichever is greater. (Emphasis added.)
 

 We find that the Board and the lower courts misinterpreted the statute to require that Bowers be totally disabled
 
 solely
 
 as the result of injuries sustained in the course of her official duties in order to be entitled to job related disability benefits under La. R.S. ll:2258(B)(l)(c). The rules of statutory construction provide that when a law is clear and unambiguous and its application will not lead to absurd consequences, it must be applied as written. La. C.C. art. 9. La. R.S. 11:215 determines eligibility and entitles a member to disability benefits if one of two requirements are met: (1) the member is totally disabled solely as a result of injuries sustained in the performance of his official duties; or (2) for any cause provided the member has five years of creditable service. If a firefighter is eligible for benefits, the next step is to look at what type of benefits he or she is entitled to under La. R.S. 11:2258. La. R.S. ll:2258(B)(l)(c) provides for the higher job related benefits if the firefighter is “totally disabled from an injury received in the line of duty ...” and La. R.S. ll:2258(B)(l)(d) provides lower non-job related benefits if the firefighter has five years of service and is disabled as a result of a continued illness or injury received even though not on the job.
 

 
 *178
 
 In this case, Bowers is eligible for disability benefits because she had at least five years of service and was an active contributing member in active service when the disability occurred, whatever the cause of her disability. La. R.S. 11:215(A). She |7will be entitled to the higher job related benefits under La. ll:2258(B)(l)(c) if she was “totally disabled from an injury received in the line of duty.” Pursuant to La. R.S. ll:2258(B)(l)(c), there is no requirement that her disability be “solely” as the result of an injury received on the job.
 
 [3]
 

 In this case, Dr. Payne testified that three factors contributed to her disability: (i)she was a thin, Caucasian female; (2) she had two vaginal deliveries at least 25 years prior to her prolapse; and (3) her job involved heavy lifting. Being a thin, Caucasian female is clearly not an injury and cannot be considered as a cause of her disability. As to her prior vaginal deliveries and the heavy lifting associated with her job, he could not determine which percentage each contributed to the disability. Based on his opinion, the Board and the lower courts found that her disability was not “solely” caused by the heavy lifting. However, as we have interpreted the statute, such a finding is unnecessary. In order to receive job related benefits under La. R.S. 11:2258(B)(1)(c), it is only re-, quired that she is totally disabled from an injury received in the line of duty. Dr. Payne testified that heavy lifting “triggered” her | ¡^disability and Bowers presented evidence at the trial court in the form of an affidavit that in the month immediately preceding her disability, she engaged in numerous tasks involving heavy lifting. Thus, she is entitled to benefits under La. R.S. ll:2258(B)(l)(c)
 

 CONCLUSION
 

 La. R.S. 11:215(A), which is determinative of whether a firefighter is eligible for disability benefits of any kind, requires either that a firefighter be totally disabled (1) solely as a result of injuries sustained in the performance of his official duties or (2) for any cause as long as he or she has' five years creditable service and the disability was incurred while the firefighter was an active contributing member in active service. If either of these two requirements are met, the firefighter is entitled to benefits under La. R.S. ll:2258(B)(l)(c) if he or she is totally disabled from an injury received in the line of
 
 *179
 
 duty, or to benefits under La. R.S. ll:2258(B)(l)(d) if he or she has five years creditable service and is disabled because of a continued illness or as a result of any injury received, even if not in the line of duty. In this case, Bowers is eligible for benefits pursuant to La. R.S. 11:215(A) because she was totally disabled, had five years of creditable service, and was an active contributing member. She is then entitled to benefits under La. R.S. ll:2258(B)(l)(c) because she was totally disabled as a result of the heavy lifting associated with her job, even if the heavy lifting was not the sole cause of her disability.
 

 DECREE
 

 For the reasons stated herein, the judgment of the court of appeal is reversed and the case is remanded to the district court for further proceedings in accordance with this opinion.
 

 REVERSED AND REMANDED.
 

 *
 

 Calogero, C.J., retired, recused. Chief Justice Calogero recused himself after oral argument and he has not participated in the deliberation of this case.
 

 [1]
 

 . "Genitourinary prolapse” was described by, the State Medical Disability Board physician, Dr. Thomas Payne, as follows:
 

 Essentially, the female organs are supported by fascial material in the pelvis that kind of support the pelvis — or, rather, support the bladder and the vagina and tire uterus and the ovaries and the space between the bladder and the vagina and the space between the rectum and the vagina. That tissue is responsible for holding everything in place, if you will. If that tissue weakens or breaks down with time, then things tend to fall down or prolapse or herniate into the vaginal canal.
 

 [2]
 

 . Because of our ruling that Bowers is entitled to job related benefits, we need not consider her discrimination claim.
 

 [3]
 

 . Two courts that have discussed these two statutes have read them in conjunction with each other, with one court setting out the analysis as follows:
 

 Read in conjunction, these provisions set forth two types of service-connected disability requirements: (1) an "in the line of duty" benefit for a disability resulting solely from injuries sustained in the performance of the employee's official duties (La. R.S. 11:215 and La. R.S. 1 l:2258(B)(l)(c)); and (2) a benefit for disabilities because of a "continued illness" or as a result of an injury received outside the line of duty, despite the cause thereof, provided that the disability was incurred while the member was an active contributing member in active service (La. R.S. 11:215 and La. R.S. 1 l:2258(B)(l)(d)).
 

 Moity v. Firefighters' Retirement System,
 
 06-0775 (La.App. 1 Cir. 3/23/07), 960 So.2d 158, 164,
 
 writ denied,
 
 07-0829 (La.6/01/07), 957 So.2d 183;
 
 see also Gibson v. Firefighters’ Retirement System,
 
 01-1585 (La.App. 1 Cir. 6/21/02), 822 So.2d 98. However, we see no reason why these two separate statutes should be read together when such an interpretation essentially changes the language of one of the statutes, i.e., La. R.S. 11:2258(B)(1)(c). While the rules of statutory construction provide that "[l]aws on the same subject matter must be interpreted in reference to each other,” that does not require that we rewrite one of the statutes to exactly track the language of the other. To the extent that those two cases are inconsistent with this opinion, they are overruled.