RANDI GANT

VERSUS

NEW ORLEANS POLICE
DEPARTMENT

\* \* \* \* \* \* \*

* NO. 2019-CA-0640

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA


APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS

\* \* \* \* \* \*
**Judge Tiffany G. Chase**
\* \* \* \* \* \*

(Court composed of Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge
Tiffany G. Chase)


Donovan A. Livaccari
LIVACCARI LAW LLC
101 W. Robert E. Lee Blvd., Suite 402
New Orleans, LA 70124


      COUNSEL FOR PLAINTIFF/APPELLANT


Renee Goudeau
ASSISTANT CITY ATTORNEY
Elizabeth S. Robins
DEPUTY CITY ATTORNEY
Sunni J. LeBeouf
CITY ATTORNEY
1300 Perdido Street
Room 5E03
New Orleans, LA 70112


      COUNSEL FOR DEFENDANT/APPELLEE


                      **AFFIRMED**
                **DECEMBER 4, 2019**

This is a civil service case. Randi Gant (hereinafter "Sgt. Gant") appeals the June 6, 2019 judgment of the Civil Service Commission (hereinafter "the Commission") which upheld her dismissal by the New Orleans Police Department (hereinafter "the NOPD"). After consideration of the record before this Court and the applicable law, we affirm the decision of the Commission.

## FACTS AND PROCEDURAL HISTORY

Sgt. Gant, a fifteen-year veteran of the NOPD, was assigned to an administrative position within the NOPD's Investigation and Support Bureau (hereinafter "ISB"). Her duties included fleet management wherein she was responsible for tracking and reporting the mileage of city owned vehicles assigned to ISB personnel. In addition, Sgt. Gant was responsible for monitoring compliance with NOPD's policies regarding take-home vehicles.[1]

NOPD Policy 705.2 of the NOPD Policy Manual mandates that a "take-home vehicle shall not be assigned to an employee when the one-way driving

---

[1] As defined in the NOPD Policy Manual, a take-home vehicle is one "assigned to personnel for their use within their job assignment [that] may be used for work-related purposes and to transport the employee to and from work."

1

distance from the employee's actual domicile to the employee's primary reporting to work site is greater than 40 miles." NOPD Policy 705.2 also mandates that "[a] department member assigned a take home vehicle shall complete a City of New Orleans Take Home Vehicle Add/Delete/Change Form" (hereinafter "take-home vehicle form"). A payroll deduction is required for use of a take-home vehicle and an accompanying policy of the City of New Orleans sets the rates at which employees, who make use of a take-home vehicle, receive a deduction in their payroll. Employees who live within 0-20 miles of their work site receives a $24.04 weekly deduction while employees who live greater than twenty miles from their work site receive a $72.12 weekly deduction.

Sgt. Gant is married to Victor Gant (also a sergeant in the NOPD) and, since 2007, the couple maintained a marital residence in Covington (hereinafter "the marital residence"). The ISB offices are located at 715 South Broad Street in New Orleans. The parties stipulated the distance between the marital residence and the ISB offices is greater than forty miles.

In 2013 or 2014, Sgt. Gant's husband was added to the lease on an apartment rented by one of his friends on Emerald Forest Boulevard (hereinafter "the Emerald Forest address").[2] The parties stipulated that the Emerald Forest address is less than forty miles from the ISB offices. Sgt. Gant's husband testified that he would occasionally stay at this apartment to better respond to emergency calls to report to duty although he acknowledged the marital residence was his

_____

[2] Although Sgt. Gant's husband could not recall when he was added to the lease, an employee of the apartment complex's management provided a date range.

primary address.  He confirmed that Sgt. Gant never lived at the Emerald Forest address and that her name did not appear on the lease.  He further testified that Sgt. Gant never had a key although she did have an access card to the apartment complex's parking lot.  In September 2015, the lease ended and Sgt. Gant's husband no longer had access to the Emerald Forest address.

On June 30, 2016, Sgt. Gant executed a take-home vehicle form.  She listed her address as the Emerald Forest address.  Sgt. Gant signed and initialed the form affirming she was aware of the policies regarding take-home vehicles and that the one-way driving distance between her actual domicile and her primary work site was 37.4 miles.

In 2018, Sgt. Gant was investigated for irregularities in the NOPD's payroll system regarding her take-home vehicle.  Lt. Precious Banks (hereinafter "Lt. Banks") of the NOPD's Public Integrity Bureau conducted the investigation.  The three charges investigated were premised on Rule 4, Paragraph 2 (Instructions from an Authoritative Source) with one charge pertaining to take-home vehicles. During the course of the investigation, Lt. Banks confirmed that Sgt. Gant did not reside at the Emerald Forest address.  Lt. Banks further discovered that Sgt. Gant had been using the log-in of a subordinate to access the NOPD's payroll system and enter mileage ranges associated with her take-home vehicle.[3]  Sgt. Gant had manually selected the 0-20 miles range option instead of the 20-40 miles range

---

[3] The NOPD did not pursue discipline for Sgt. Gant's use of another employee's log-in credentials, as it later determined that they were provided voluntarily as the employee was unable to satisfactorily perform her task of payroll data entry.

option. When giving her statement to Lt. Banks, Sgt. Gant contended the erroneous payroll entries were an unintentional mistake, and filed a series of payroll adjustment forms to repay the monetary amounts that should have been properly deducted from her payroll.

On August 31, 2018, Sgt. Gant was issued a Notice to the Accused of Completed Investigation and Notice of Pre-Disciplinary Hearing form. Lt. Banks recommended that the original Rule 4, Paragraph 2 charges be dismissed. Three additional charges were also listed: 1) Rule 4, Performance of Duty, Paragraph 2: Instructions from an Authoritative Source (NOPD Policy 705 Take Home Vehicles);[4] 2) Rule 6: Official Information, Paragraph 2: False or Inaccurate Reports (City of New Orleans Take Home Vehicle Add/Delete/Change Form and NOPD Vehicle Inventory Reporting Form); and 3) Rule 6: Official Information, Paragraph 2: False or Inaccurate Reports (ADP Payroll Records, 44 payroll periods). Lt. Banks recommended these charges be sustained.

On November 14, 2018, the NOPD conducted a Superintendent's Disciplinary Committee pre-disciplinary hearing. The NOPD did not sustain the Rule 4, Paragraph 2 charge. However, it sustained the Rule 6, Paragraph 2 charges as to the take-home vehicle form and payroll entries. The penalty for these violations was dismissal. Sgt. Gant appealed this decision to the Civil Service Commission.

---

[4] This charge carried over from one of the three original charges with the only difference being a numerical re-designation of the take-home vehicle policy.

4

A hearing was conducted by a Civil Service Commission Hearing Examiner at which testimony was heard from Sgt. Gant, her husband, Lt. Banks, Deputy Superintendent John Thomas (hereinafter "Deputy Superintendent Thomas"),[5] and former Deputy Superintendent Rannie Mushatt (hereinafter "Deputy Superintendent Mushatt").[6] Evidence introduced into the record included the take-home vehicle form, documentation of the investigation and resulting discipline, and the NOPD's rules, policies, and penalty matrix. On June 6, 2019, the Commission rendered its decision denying Sgt. Gant's appeal. Sgt. Gant filed her appeal to this Court.

## STANDARD OF REVIEW

Appellate courts review an appeal of a decision by the Civil Service Commission under a multifaceted standard of review.

> In *Banks v. New Orleans Police Dep't.*, 2001–0859, p. 3 (La.App. 4 Cir. 9/25/02), 829 So.2d 511, 513–14, we articulated the standard of review in civil service cases. First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review. *See Stern v. New Orleans City Planning Comm'n*, 2003-0817, pp. 5-6 (La.App. 4 Cir. 9/17/03), 859 So.2d 696, 699–700.

---

[5] Deputy Superintendent Thomas is the current head of the ISB and served as chairperson on the three-member panel in Sgt. Gant's Disciplinary Hearing before the NOPD.

[6] Deputy Superintendent Mushatt, now retired, was the former head of the ISB at the time the events underlying the charges against Sgt. Gant transpired.

*Russell v. Mosquito Control Bd.*, 2006-0346, pp. 7-8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40.

## DISCUSSION

Sgt. Gant presents three assignments of error on appeal. The first two assignments of error relate to the substantive findings of the Commission challenging the existence of cause for Sgt. Gant's dismissal and that her dismissal was commensurate with the offense. The third assignment of error is a procedural challenge wherein Sgt. Gant seeks to have her dismissal declared an absolute nullity. We organize our discussion of these assignments of error into two sections, addressing the procedural challenge first.

### PROCEDURAL CHALLENGE: NOTICE

Sgt. Gant argues that because the NOPD did not comply with the notice requirements of La. R.S. 40:2531(B)(1),[7] her discipline of dismissal should be deemed an absolute nullity pursuant to La. R.S. 40:2531(C). At the Commission hearing, the following exchange took place between counsel for Sgt. Gant and the Hearing Examiner:

---

[7] La. R.S. 40:2531(B)(1) provides:

B. Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:

(1) The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation. The police employee or law enforcement officer shall be allowed to make notes.

**COUNSEL FOR SGT. GANT:**

Just to be safe for – for clarity and the stipulation, it's the time – the – the requirements of [La. R.S. 40:2531(B)(7)] that we're stipulating to, the timeline – the time requirements, right?

**HEARING EXAMINER:**

Fair point.

**COUNSEL FOR SGT. GANT:**

Okay. Thank you.

**HEARING EXAMINER:**

I mean, I guess, for the reader of the record, the required – there's no dispute on the appellant's part that the investigation was completed within the timeline required by [La. R.S. 40:2531(B)(7).]

**COUNSEL FOR SGT. GANT:**

Yes, sir.

**HEARING EXAMINER:**

Okay. And that [it] is my understanding that the appellant intends to make a different argument with respect to the investigation – with respect to –

**COUNSEL FOR SGT. GANT:**

No –

**HEARING EXAMINER:**

– its adherence to the law?[8]

**COUNSEL FOR SGT. GANT:**

– I don't have any plans on that at this point.

---

[8] From the foregoing exchange, we infer that the "different argument" regarding the "adherence to the law" is the La. R.S. 40:2531(B)(1) argument briefed in Sgt. Gant's third assignment of error.

Although counsel for Sgt. Gant would later elicit testimony from witnesses related to the La. R.S. 40:2531(B)(1) argument, there was never a formal motion made on the record. *See Rivet v. Dep't of Police*, 2018-0229, pp. 13-14 (La.App. 4 Cir. 10/24/18), 258 So.3d 111, 121-22 (employee made a procedural due process argument alleging insufficient notice and raised it before the Commission in a motion for summary disposition). The report of the Hearing Examiner does not reveal that the argument was raised, nor does the opinion of the Commission render any decision regarding a potential failure to follow the procedural requirements of the statute.[9]

Finding nothing in the record establishing that the La. R.S. 40:2531(B)(1) issue was raised in any of the proceedings below, we decline to consider the issue now raised for the first time on appeal. *See Razor v. New Orleans Dep't of Police*, 2004-2002, pp. 5-6 (La.App. 4 Cir. 2/15/06), 926 So.2d 1, 5.

---

[9] The following three assignments of error are listed in Sgt. Gant's Notice of Appeal from the Commission's decision:

> A. The Civil Service Commission erred in determining that cause existed as required by La. Const. Art. 10, Sec. 8 to discipline Appellant.
>
> B. The Civil Service Commission erred in determining that the penalty assessed against the Appellant was commensurate with the offense.
>
> C. The Civil Service Commission erred in its interpretation of an NOPD [regulation] which is overly broad and unduly vague.

A and B mirror the first two assignments of error presented in Sgt. Gant's appeal to this Court. The argument in C is incorporated into Sgt. Gant's first assignment of error related to lawful cause. No reference is made to a challenge pursuant to La. R.S. 40:2531.

**SUBSTANTIVE CHALLENGE: FINDINGS OF THE COMMISSION**

Sgt. Gant's substantive challenge to the Commission's decision requires a two prong inquiry: 1) whether the NOPD had cause for dismissing Sgt. Gant; and 2) whether the dismissal was commensurate with the offense. *See Abbott v. New Orleans Police Dep't.*, 2014-0993, p. 8 (La.App. 4 Cir. 2/11/15), 165 So.3d 191, 197. We address each separately.

### *Discipline for Cause*

"An employee with permanent status in the classified civil service cannot be subject to disciplinary action by his employer except for cause expressed in writing." *Regis v. Dep't of Police*, 2013-1124, p. 1 (La. 6/28/13), 121 So.3d 665 (per curiam) (citations omitted). Here, the NOPD is required to establish cause by proving, by a preponderance of the evidence, that the complained of conduct occurred, and that the complained of conduct impaired the efficiency of the department.[10] *Id.*, p. 2, 121 So.3d at 665. This Court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. *Id.* (citing *Bannister v. Dep't of Streets*, 1995-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647). A decision by the Commission is "arbitrary and capricious" if there is no rational basis for the Commission's action. *Id.*

---

[10] The Commission found that Sgt. Gant's submission of false information impaired the efficiency of the department noting "[h]er conduct was particularly troubling given her role in ISB involved managing a fleet of vehicles and enforcing the very policies she violated." It further concluded the false entries into the payroll system were "arguably a worse offense given that she reaped a direct financial benefit" and that the department's fleet of vehicles is maintained with public funds. On Sgt. Gant's appeal to this Court, she does not challenge these findings.

Rule 6, Paragraph 2 provides: "An employee shall not knowingly make, or cause or allow to be made, a false or inaccurate oral or written record or report of an official nature, or intentionally withhold material matter from such report or statement." Sgt. Gant challenges the Commission's finding of cause for two reasons: 1) that the take-home vehicle form and payroll entries are not covered by the rule; and 2) that her inaccuracies were not knowingly made. We address these two arguments in turn.

First, Sgt. Gant argues that the take-home vehicle form and payroll entries should not be considered as records or reports of an official nature and thus are outside the scope of Rule 6, Paragraph 2. She contends that Paragraph 2, read in *pari materia* with the other Paragraphs under Rule 6, dictates that its applicability should be limited to police reports and not internal administrative documents.

The Commission noted the issue of whether Rule 6, Paragraph 2 should apply to a take-home vehicle form is a matter of first impression for the Commission and the NOPD. Deputy Superintendents Mushatt and Thomas, along with Lt. Banks, testified that, in their experience, only police reports and daily activity sheets have been subject to disciplinary proceedings under Rule 6, Paragraph 2. However, Deputy Superintendent Thomas also testified that "based off the investigation, [the NOPD] determined that [the take-home vehicle form at issue] was an official form of an inaccurate report, a false or inaccurate report." We observe that under the arbitrary and capricious standard, the NOPD is entitled

to deference in the interpretation of its own rules. *See Bowers v. Firefighters'*

*Retirement System*, 2008-1268, p. 4 (La. 3/17/09), 6 So.3d 173, 176.

The language of Rule 6, Paragraph 2 does not limit the definition of a

"report of an official nature" to one that could impact the course of an

investigation. The Commission noted that while the rule does not define a "report

of an official nature," take-home vehicle forms and payroll records are maintained

by the NOPD in the normal course of business. It further rejected Sgt. Gant's

argument that the rule should not apply unless the report is "material."[11]     The

Commission reasoned that the NOPD would have specifically limited Rule 6,

Paragraph 2 if it so intended, as in contrast, the "rule requiring honesty and

truthfulness covers knowingly false statements that are 'material,' and defines a

material statement as one that could impact 'the course or outcome of an

investigation or official proceeding.'" Where the NOPD wanted to limit the scope

of its rules, it affirmatively did so within the rule itself. We find the Commission's

interpretation reasonable.

In Sgt. Gant's second argument as to an insufficient finding of cause, she

avers she did not knowingly violate Rule 6, Paragraph 2. Sgt. Gant believed she

had the right to list the Emerald Forest address on her take-home vehicle form

because her husband was on the lease and that this right of access extended to her

given the marital relationship. Sgt. Gant also argues that she was not aware her

---

[11] The Commission determined that since the second independent phrase is disjunctive, the word "material" only applies as a requirement that a matter be material if it is intentionally withheld from a report. Sgt. Gant does not re-urge this argument in her appeal to this Court.

husband's lease expired in 2016, when she used it on the take-home vehicle form. As it pertains to the payroll entries, Sgt. Gant argues her selection of the 0-20 miles option was a mistake and that her arrangement to correct the mistake by the payroll adjustment forms should weigh in favor of her credibility.[12]

The Commission found that Sgt. Gant knowingly violated Rule 6, Paragraph 2 when she used the Emerald Forest address on the take-home vehicle form. The Commission noted Sgt. Gant, who managed ISB's fleet of vehicles, was knowledgeable of the mileage limitations. She did not use the Emerald Forest address for any other official purposes. Testimony from Sgt. Gant and her husband confirmed the fact that she never resided at the Emerald Forest address and, at all relevant times, resided at the marital residence. Further, Sgt. Gant admitted she was using the Emerald Forest address as a "workaround" to fit within the NOPD's take-home vehicle policy. The Commission observed that Sgt. Gant likely avoided putting 20,000 miles on her personal vehicle as a result.

The Commission also found that Sgt. Gant knowingly violated Rule 6, Paragraph 2 when she entered the 0-20 miles payroll entries. Noting that she made this alleged "mistake" forty-four times and evaded approximately $2,000 in deductions, the Commission concluded that "[t]he number of errors combined with the financial benefit and [Sgt. Gant's] role within ISB make it more likely than not that [Sgt. Gant] purposefully selected the lesser mileage deduction." It further

---

[12] In her testimony before the Commission, Sgt. Gant suggests the mistake was due to the fact that she used to enter the payroll information for Deputy Superintendent Mushatt and other officers who were in the 0-20 mile range: "I don't know if it was just repetitive because I'm just 0 to 20, 0 to 20, 0-20. But I – I can't explain it because I didn't realize I was doing it."

found Sgt. Gant's attempt to repay the money following her statement to Lt. Banks to be unpersuasive in regards to her credibility.

The Commission weighed the evidence and determined the NOPD established that Sgt. Gant knowingly violated Rule 6, Paragraph 2 in falsifying both the take-home vehicle form and the payroll entries. This Court has previously held that "'deference will be given to the factual conclusions of the Commission.'" *Pope v. New Orleans Police Dep't*, 2004-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4 (quoting *Smith v. New Orleans Police Dep't*, 1999-0024, p. 5 (La.App. 4 Cir. 9/22/99), 743 So.2d 834, 837). Here there is sufficient evidence in the record to support the Commission's factual conclusions. We therefore find Sgt. Gant's argument that the Commission erred in finding she knowingly falsified official reports to be without merit.

### *Discipline Commensurate with Offense*

Sgt. Gant argues the Commission erred in finding the discipline of dismissal was commensurate with her offense. In support, Sgt. Gant notes that she was initially charged with violations of Rule 4, Paragraph 2 (a Level C violation) which, as applied here, would have only resulted in a five day suspension subject to mitigating or aggravating circumstances. Sgt. Gant then offers her fifteen year career with only one other minor disciplinary incident and praise from former Deputy Superintendent Mushatt as potential mitigating factors. Nonetheless, Sgt. Gant acknowledges that Rule 6, Paragraph 2 (as a level G violation) does not allow for any mitigation.

"It is well settled that this Court should not modify the discipline imposed by the Commission unless it is 'arbitrary, capricious, or characterized by an abuse of discretion.'" *Rivet*, 2018-0229, p. 10, 258 So.3d at 120 (quoting *Cure v. Dep't of Police*, 2007-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1095). Great deference should be afforded to the Commission's ruling upholding the disciplinary decision of the NOPD – "neither the [Commission] nor the reviewing court may serve as a *de facto* pardon board." *Rivet*, 2018-0229, pp. 10-11, 258 So.3d at 120 (citations omitted).

The Commission found the NOPD's argument that severe penalties should accompany violations of Rule 6, Paragraph 2 because it would be problematic if such a compromised officer be required to serve as a material witness in a criminal prosecution to be persuasive. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d. 215 (1963) *and Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Although, Deputy Superintendent Mushatt disagreed that such concerns apply to Sgt. Gant's misconduct because internal forms are not relevant to criminal prosecution, Deputy Superintendent Thomas testified that it would still be a problem to have an officer's ethics placed at issue. We acknowledge a degree of attenuation in the NOPD's reasoning as, by the nature of her position, it would be unlikely for Sgt. Gant to serve as a material witness in a criminal prosecution. However, under the arbitrary and capricious standard, the NOPD need only advance a rational basis for its disciplinary decision. We find the

14

Commission's reliance on the NOPD's *Brady* and *Giglio* concerns to be a reasonable basis to support a penalty of dismissal.

The Commission also noted that dismissal was the only disciplinary sanction Rule 6, Paragraph 2 provided for in the NOPD's penalty matrix. Deputy Superintendent Thomas testified he served on the NOPD's Compliance Bureau when the rule was drafted. He stated that as law enforcement officers are given great deference in their actions, they must live up to a higher standard. This Court has similarly noted that as "[t]he public puts its trust in the [NOPD] as a guardian of its safety," the NOPD should "be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust." *See Rivet*, 2018-0229, p. 8, 258 So.3d at 118 (quoting *Stevens v. Dep't of Police*, 2000-1682, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627). Thus, we find the Commission was reasonable in determining Sgt. Gant's dismissal was a penalty commensurate with her offense. *See Rivet*, 2018-0029, p. 11, 258 So.3d at 120.

## DECREE

For the foregoing reasons, the judgment of the Civil Service Commission is affirmed.

**AFFIRMED**

15