# LOUISIANA
## COURTS OF APPEAL REPORTS
### VOLUME 6

## CASES ARGUED AND DECIDED IN THE COURTS OF APPEAL OF LOUISIANA

### Beginning Term October, 1926

No.——

First Circuit

———

BORDEN-AICKLEN AUTO SUPPLY CO. v. FOLSE SERVICE STATION

REDMOND & SON, INC., v. FOLSE·SERVICE STATION

BRAUD & SON v. FOLSE SERVICE STATION

Consolidated

———

(Feb. 12, 1927. Opinion and Decree.)
(Feb. 12, 1927. Rehearing on behalf of E. M. Gordon refused.)
(Feb. 12, 1927. Rehearing on behalf of plaintiff in the case of Redmond & Son, Inc., against Folse Service Station, refused.)

———

(*Syllabus by the Editor.*)

1. Louisiana Digest—Partnership—Par. 10, 18, 19.

A partnership is formed only by the intention of the contracting parties and even though the profits are divided between the parties, this fact does not make them partners, unless they intend to create a partnership.

2. Louisiana Digest—Partnership—Par. 20.

Where a party although not a partner holds himself out as a partner of a firm by paying for articles already shipped to the firm and telling the seller that he was interested in buying more articles for the firm; he will be held liable as a partner for articles sold to the firm.

3. Louisiana Digest—Partnership—Par. 20, 24.

The report of a commercial agency that a person is a partner in a firm which report is unauthorized by that party, is not sufficient to hold that party liable for the debts of the partnership where others rely on that erroneous statement of the commercial agency.

Appeal from Lafourche Parish. Hon. Robert B. Butler, District Judge.

Action by Borden-Aicklen Auto Supply Company against Folse Service Station, B. V. Redmond & Son, Inc., against Folse Service Station, and A. P. Braud & Son against Folse Service Station.

There was judgment for plaintiffs, Borden-Aicklen Auto Supply Company. B. V. Redmond & Son, Inc., and A. P. Braud & Son against Folse Service Station and E. M. Gordon, alleged co-partner. Defendant appealed.

Judgment affirmed in the case of Borden-Aicklen Auto Supply Company against Folse Service Station but reversed in the cases of B. V. Redmond & Son, Inc., against Folse Service Station and A. P. Braud & Son against the Folse Service Station insofar as E. M. Gordon, alleged co-partner, was held liable by the District Court.

Francis L. Knobloch, of Thibodaux, attorney for Borden-Aicklen Auto Supply

Company and also for B. V. Redmond & Son.

Harvey E. Pelletier, of Thibodaux, attorney for A. P. Breaux & Son.

Howell, Wortham & Howell, of Thibodaux, attorney for defendant, E. M. Gordon, alleged co-partner.

MOUTON, J.   These three consolidated suits were brought against the Folse Service Station as a commercial partnership alleged to be composed of Joseph M. Folse, Jr., and E. M. Gordon.  Judgment is asked against the alleged partnership, and individually, against the members, which it is averred, constitute the firm.  Folse admitted in his testimony that the Folse Service Station was a co-partnership composed of himself and Gordon as members. Having admitted his membership in the firm and not having disputed the respective claims of the plaintiffs, judgment was accordingly rendered against him, and he is therefore eliminated as a defendant in these cases.

Gordon denies the existence of the alleged partnership or that he is liable to the plaintiffs in any amount.

The district judge refrained from deciding whether a partnership existed, but held that Gordon, by his acts, representations or conduct, had held himself out as a partner in the Folse Service Station, which had the effect of inducing plaintiffs to honestly believe that the Folse Service Station was a partnership of which Gordon was a member, and that he was therefore responsible to the plaintiffs for the advances made by them to the Folse Service Station.

The first question presented for decision is as to whether or not such a partnership existed and as to whether Gordon was a co-partner.

We first address ourselves to a discussion of this proposition, because, if such a partnership existed when the advances were made by plaintiffs, Gordon would be unquestionably liable, and there would be no necessity for us to pass on the question upon which the lower court rested its judgment.

Folse testified that his agreement with Gordon, a verbal one, was that Gordon would furnish everything for the Folse Service Station; would give him $20.00 per week in advance as a salary; that they would divide the profits equally, and that he would be manager of the station.

Gordon denies that such a partnership was ever formed or that he was a partner therein.  The version given of the agreement by Gordon is that he agreed to finance Folse in putting up the Service Station to the amount of $1500.00 to be paid by Folse in weekly installments of $35.00 with 8 per cent interest on the money loaned.  Gordon and Folse are equally positive in these, their contrary and conflicting statements in reference to the contract into which they entered.

The evidence shows that Gordon paid for most all of the equipments that went into the Folse Service Station.  He says, he paid for the equipments because he had promised to do so with the $1500.00 he had engaged himself to advance Folse.  It is shown that Gordon advised plaintiffs, who were selling these equipments, not to advance too much to Folse.  Because he was solicitous about the amounts that would be advanced to Folse, counsel for plaintiffs contend that this manner of acting on the part of Gordon shows that he had a proprietary interest in the station and that he was a partner.

As we read the evidence, the interest shown by Gordon in the purchases Folse

was making, was prompted by a desire to see that Folse would not buy in excess of the $1500.00 for which he had obligated himself to respond. Gordon, it is shown, took no written security when he advanced this money to Folse. This fact is referred to by plaintiffs as being rather peculiar in a transaction of this importance. Gordon explains this by saying that Folse had promised to furnish security but had failed to do so. Folse denies this and as a matter of fact, contradicts Gordon in every important particular. It also appears that after the station was closed, Gordon sold a wrecker that he had bought for it, and also offered to sell other tools or accessories he had furnished Folse. Plaintiffs' counsel say that this sale and offer of sale by Gordon show that he was acting as a proprietor or co-partner. The things Gordon sold or offered to sell, the evidence shows beyond question, had been bought and paid for by Gordon. It is clear that he had not authority to dispose of them in that manner. He frankly admits that he was perhaps mistaken as to his right to thus handle this property, but he says he honestly believed it was his, as he had bought and paid for it, although the evidence shows he had purchased it for Folse.

It was simply, as we read the evidence, the result of a layman's misconception of his rights, grounded on the idea that it belonged to him because Folse had not paid him for it and does not show that Gordon was acting in the quality of a co-partner. It seems also that Folse was laboring under the same error, as he permitted Gordon to dispose of the equipments as his individual property. Reference is also made by counsel for plaintiffs to the fact that Gordon took from Guidry a lease, in his name, of the property on which the service station was established. Gordon explains that he took it because Guidry would not rent it to Folse. It is

shown that Folse paid the rent for the first two or three months, and then refused to continue the payments. It was then that Gordon paid the subsequent rental for a couple of months, and ordered the key of the building returned to Guidry. If the property had been rented for the pretended partnership, why should Gordon have paid the rent? He paid it because he considered this a personal obligation he had incurred for Folse's benefit.

Counsel for plaintiffs point also to the fact that Gordon, who lived in Jefferson parish, was a frequent visitor at the station, coming there two or three times a week. It can not be successfully gainsaid that he had a vital interest in the success or prosperity of the station, as he had advanced Folse a considerable sum for which he had not obtained the security he had been promised. It is a fact, however, that during these visits it does not appear that Gordon ever examined the books of the service station or inquired into its affairs. If it had been a partnership in which Gordon was a member, it is not likely that he would have failed to look into the business it was carrying on, so that he might have protected himself against the debts for which he would have been responsible, and that he might obtain his share of the profits.

The evidence shows that Miss Blouin was appointed by Gordon to represent his interest at the service station. She was authorized to sign checks in conjunction with Folse for the affairs of the station. When she got through there as the representative of Gordon, she turned $48.00 over to him, and which he says, he applied to the interest which had accumulated on the money he had loaned Folse.

The evidence shows that in thus appointing Miss Blouin, Gordon was actuated by a desire not to have Folse incur further

debts in purchases he might make. He was acting under the impression that he had a right to do this for the protection of his proprietary interest in the equipments for which he had paid. This was undoubtedly a mistaken idea into which he had fallen. Although this was a misconception on his part, it nevertheless does not show that his intention was to act as a partner in the affairs of the station. We emphasize the foregoing statement, as it is well recognized that a partnership is formed only by the intention of the contracting parties and that even when the profits are divided between the parties, this fact does not make them partners, unless they intend to create a partnership. 30 La. Ann. Needless to repeat that in this case Gordon denies that a division of profits was ever agreed to, and the reference we make to the intent, is merely to show that it is one of the sacramental requirements for the creation of a partnership.

Miss Blouin, while testifying as a witness for plaintiffs, said that while she was working at the station she heard a conversation between Folse and Gordon in which it was stated that Folse was to pay $35.00 a week on account of the loan which he had contracted to pay Gordon; that she was put there to collect it, and that Folse agreed thereto. She was thereafter placed on the witness stand for defendant, Gordon. She testified in reference to a written contract which is dated June 30, 1925. In that contract, which is signed by Folse and Gordon and witnessed by Miss Blouin, after declaring that the equipments in the service station were the property of Gordon, it is therein stated that Folse is to pay therefor $35.00 a week with interest until they are paid, etc.

Folse was examined in reference to this contract. He says the clause in that agreement that he was to pay $35.00 a week until the equipments were paid for was not in there when he signed it; that Gordon, who had prepared it, told him that the agreement was he should not sell the tools. He said, however, in answer as to whether he had read it before he signed, that he had "read part of it". If that is all he read, how is it possible for him to deny that the clause which contained his promise to pay the $35.00 a week was not in that agreement? Miss Blouin testified that Folse read all of that contract, that he emphasized on some parts which were read loud, and that she remembers all that well, because he hesitated before he signed it.

Gordon testifies that Folse read the document and signed after reading in the presence of Miss Blouin. He explains that the document bears the date of March 31, 1925, because he started to make a memorandum at that time when the agreement was originally entered into; and that the other date, June 30th, which the contract bears, is the date it was signed. He says that he could see no erasures on the document, but that there were probably some which he had made, but that he is absolutely certain, if any were made, that they were inserted before it was signed. He is absolute in his statement that he never changed a syllable or a line therein after it was signed. This statement is supported by the testimony of Miss Blouin, who says the document was written to the point it was when she was testifying, and that no blank places had been filled. The facts and circumstances of this case to which we have hereinabove referred, taken in connection with the testimony of Miss Blouin in reference to the discussion at the station as to the agreement that Folse had promised to pay $35.00 per week on his loan, and the fact that he signed this document which con-

tains a clause to that effect, make it quite clear that Gordon had financed the Service Station for a certain amount and never formed a partnership with Folse. He, therefore, cannot be held as partner. He can only be held for the reasons given by the district judge, if the evidence sustains his finding. The court gave judgment for the three plaintiffs because Gordon had held himself out as a partner in the Folse Service Station. The proof shows that Long, salesman for the Borden-Aicklen Company, sold articles or equipments for the Folse Service Station. Aicklen says Gordon came to the office of the company in New Orleans and paid for the shipment. He says he then told Gordon that Folse was interested in buying a steel counter; that Gordon said he did not want him to have it at that time, and that it could be taken later if the business of the station justified it. Aicklen says it was upon the strength of Gordon's connection with the service station, and his representation that he was looking after the financial end of its business, that the credit of his company was extended to the Folse Service Station. Gordon explains that in his conversation with Aicklen he only meant to convey the idea that he was only advancing a loan to Folse to the amount of $1500.00 to purchase tools or accessories for the station, and that he never made the statement that he was a partner, or that could be construed as such. The evidence, we think, justifies Aicklen in the statement he makes that Gordon's conduct and the language he used on the occasion mentioned was of such a character as to induce him to honestly believe he was a partner, and which led him to advance the goods to the service station.

The lower court, we find, properly held Gordon for the price of these goods. The case of A. P. Braud & Son rests on evidence of quite a different character. Braud says he was asked by Folse to put a pump at the station but that he did not want to install it before he saw Gordon about it. Gordon, he says, after talking with him on the subject, said if Folse said it was "all right, it was all right with him". Braud says he was acting on what Folse had told him that "Gordon would back him up". He admits, however, that Gordon never said anything to him that could have led him to believe that he was going to pay the bills of the station. Basing himself on the statement of Folse that Gordon was "backing him up", Braud assumed that Gordon was a partner, installed the pump and made advances to the station in the sum of $410.12. Gordon says in reference to the installation of the pump that he remembers Mr. Guidry told him about the pump being in the driveway, but that, in reality, he did not remember the conversation he had with Braud. He is certain, however, that he never told Braud that he was a partner in the station or that he was financing it. The evidence of Braud, accepting it as true, fails to show that Gordon, on the occasion stated, acted in such a way, or used any language, that could justify Braud in honestly believing that Gordon was a partner. In this case Gordon is not liable and the demand of Braud must be rejected.

In the case of Redmond & Son, the evidence shows that the goods were advanced to the station upon investigation made of the report of commercial agencies. Toledano, testifying for that company, says, acting on the report of the Bradstreet Company, he found that Folse and Gordon were the proprietors of the Folse Service Station; that Gordon was rather a responsible risk, and on the basis of that report the advances were made by his company. Gordon testifies that he never made any representation

to any commercial agency that he was connected, at any time, with the Folse Service Station. He says he receives a circular every year from that house, but that he never fills it in, and never gives it a report. It is certain from the evidence that Gordon never represented himself to the Redmond Company as being a partner or even as having any connection whatsoever with the Folse Service Station. It is equally certain that the report of the Bradstreet agency of his connection with that station was never inspired or authorized by him. Plaintiffs in that case acted altogether in an erroneous assumption, and cannot recover against Gordon.

For the reasons hereinabove stated, the judgment in the case of Borden-Aicklen Supply Company vs. Folse Service Station is affirmed against E. M. Gordon with cost. In the cases of A. P. Braud & Son and B. V. Redmond & Son vs. Folse Service Station, the judgments therein rendered against E. M. Gordon are reversed and in which proper decrees will be entered in the respective records of those cases for the reasons hereinabove stated.