15 So.3d 133 (2009)
In re B.E.S. Applying for Intrafamily Adoption.
No. 08-CA-777.
Court of Appeal of Louisiana, Fifth Circuit.
May 6, 2009.
*134 Bernadette R. Lee, Edith H. Morris, Suzanne Ecuyer Bayle, Attorneys at Law, New Orleans, LA, Betsy Fischer, Attorney at Law, Metairie, LA, for Plaintiff/Appellant.
Mark A. Marino, Attorney at Law, Destrehan, LA, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, WALTER J. ROTHSCHILD, MADELINE JASMINE, Pro Tempore, and JEROME M. WINSBERG, Pro Tempore.
WALTER J. ROTHSCHILD, Judge.
This is an appeal from a judgment of the trial court denying a petition for intrafamily adoption. For the reasons stated herein, we reverse the trial court's judgment and render judgment in favor of petitioners.

Fact and Procedural History
The minor child, B.E.S.[1] was born on January 22, 2004 and has resided with her mother, C.S.P., since her birth. Although C.S.P. was not married at the time of the child's birth and the name of the child's father does not appear on the birth certificate, there is apparently no dispute that K.M.B. is the child's biological father.
On July 30, 2006, C.S.P. married V.J.P., Jr., and C.S.P. was granted sole custody of B.E.S. one year later. On January 16, 2008, C.S.P. and V.J.P., Jr. filed the present petition for an intrafamily adoption pursuant to LSA-Ch. C. art. 1255. On February 19, 2008, K.M.B. filed an opposition to the petition for adoption.
At the trial of this matter in July of 2008, C.S.P. testified that K.M.B. was in jail at the time of the birth of B.E.S. K.M.B. was released from jail when B.E.S. was two and a half years old. He returned to jail just after B.E.S. turned three. During the time K.M.B. was not in jail, B.E.S. visited with K.M.B. twice a week for a few hours and every other Friday over night. K.M.B. lived with his parents at the time of these visits.
C.S.P. testified that in February of 2007, she brought the child to K.M.B. for an over night visit. She explained that the child had been sick and asked that the child not be taken to a birthday party that evening. C.S.P. testified that K.M.B responded that it was his night and he would do whatever he wanted with the child. C.S.P. testified that she asked the father of K.M.B, B.B. to make sure the child was not taken out that night. B.B. responded that K.M.B. could do whatever he wanted with the child. C.S.P. further testified that B.B. then pushed her out of the house and slammed her against the wall causing her husband to "pull the two of them off of me." C.S.P. testified that this caused the child to cry. She explained that after this incident when the child saw pictures of K.M.B.'s family, she would state she did not go to their house because they are mean and they pushed her mom. Although the police were called, no charges *135 were filed as a result of this event. C.S.P. testified that K.M.B. went back to jail shortly after this incident.
C.S.P. testified that the last birthday or Christmas card B.E.S. received from K.M.B. was in January 2007. C.S.P. further testified that B.E.S. had not received any cards, phone calls, or communication of any kind from K.M.B. between February of 2007 and June of 2008; nor had there been any visits between B.E.S. and K.M.B.'s family since that time. C.S.P. admitted that there was no court order of support from K.M.B.; however, K.M.B. had paid support of $400 or $450 per month for several months while he was working.
C.S.P. testified that V.J.P., Jr. had been a part of B.E.S.'s life since she was one and one half years old and he was the only father B.E.S. has ever known. She explained that V.J.P., Jr. does "everything" for the child including putting her to bed and waking her up and taking her to school. She described the relationship between her husband and her child as very close. C.S.P. testified that she and her husband own a home in which the child has her own room. C.S.P. had been employed at the same company for six years while her husband had been in his position for two years. She explained that they had sufficient income to provide for the needs of the child.
V.J.P., Jr.'s testimony corroborated that of C.S.P. V.J.P, Jr. testified that he expresses to B.E.S. how much he loves her and described the progression of their relationship. He testified as to various activities he and B.E.S. do together. V.J.P., Jr. testified that he understood that if he adopted B.E.S. he would be responsible for her mental and physical well-being and that he was willing to do so. His testimony regarding the incident of February 2007 corroborated that of his wife.
B.B., K.M.B.'s father, testified that while his son visited B.E.S. they had a close and loving relationship. With regard to the February 2007 incident, B.B. testified that he heard C.S.P. tell K.M.B that because he had not paid support he could not keep the child for the night. K.M.B. stated that he would get a check to C.S.P. by the end of the night. B.B. then offered to write a check for support. B.B. testified that C.S.P. then stated to him "you are always getting him out of trouble." B.B. stated that at that time he approached C.S.P. and asked her to leave his home. He explained that she would not leave and he tried closing the door. At that point V.J.P., Jr. pushed B.B. B.B. testified that they gave the child back to C.S.P. The police were called but no charges were filed. B.B. testified that there had been no contact between his family and B.E.S. since February 2007 because C.S.P. "would not let us."
K.M.B. testified that before he went to prison the second time, he had a great relationship with B.E.S. He testified that he spent as much time as he could with the child. K.M.B. testified he is in prison on a work release program and hopes to open his own business and purchase a home upon his expected release date of July 13, 2009. He further testified that he has been steadily employed except for the time he was incarcerated.
K.M.B. testified that he had not had any contact with B.E.S. since February 2007 because he is "scared to call over there or send something because of the threats she made to my parents." He acknowledged that there is no court order prohibiting him from sending gifts to B.E.S. He further acknowledged that he did not provide financial support for B.E.S. since he had been incarcerated. K.M.B. testified that it is a blessing that V.J.P., Jr. is in B.E.S.'s life and that V.J.P., Jr. could do as good a *136 job as he in acting as the child's father. K.M.B. explained that it was not in the child's best interest to be adopted because when he gets out of prison he will reestablish a relationship with the child.
A.B., K.M.B.'s sister, testified that she and her sister put presents on the porch of the home where B.E.S. lives. As they were leaving C.S.P. drove up and told them they did not have to do this. She later got a message from C.S.P. stating that if she or her family came on C.S.P.'s property again she would call the police. This message was passed along to K.M.B.
A.B. testified that K.M.B. and B.E.S. "adored each other". She explained that while K.M.B. was not in prison, he saw B.E.S. two or three times per week and that K.M.B. spent as much time as possible with the child. A.B. further testified that when K.M.B. was incarcerated the first time, she and her family visited with B.E.S. and had a very close relationship with the child. A.B. stated they had not had any contact with B.E.S. since February 2007 because they were not allowed to. She described two incidents where she saw the child in public but was not allowed to talk to the child. A.B.'s testimony regarding the February 2007 incident corroborated that of K.M.B. and B.B.
The testimony of G.B., K.M.B.'s mother, regarding the February 2007 incident corroborated that of the rest of her family. G.B. testified she called C.S.P. on more than one occasion after this incident and was told they could not see the child. G.B. testified that it was not in the child's best interest to allow the adoption because K.M.B. "loves her to death" and the rest of the family loves her as well. On cross-examination, G.B. admitted she and her husband had not filed for any type of court order allowing them to visit with the child.
At the conclusion of the hearing, the trial court denied the petition for adoption, finding that petitioners failed to prove the father failed to visit or communicate with the child without just cause for a period in excess of six months. This timely appeal by C.S.P. and V.J.P., Jr. followed.

Law and Discussion
Intrafamily adoptions, such as the one here involving a stepparent and spouse of the custodial parent of the child, are authorized by the Louisiana Children's Code, articles 1170 and 1243. Although La. Ch.C. art. 1193 requires the consent of the biological parent, consent may be dispensed with upon proof that the spouse of the stepparent has been granted custody of the child and the other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months. La. Ch. C. art. 1245(C). The court is to hear and take into consideration information from all sources concerning the intrafamily adoption, and the basic consideration shall be the best interests of the child. La. Ch.C. art. 1255(A). When the court has granted custody to the child's parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child. La. Ch. C. art. 1255(B).
The trial judge is vested with great discretion in determining whether an adoption is in the best interest of the child and each case must be decided on its own facts. The trial court's discretion is not absolute and a determination of best interest is subject to reversal if the record reveals manifest error in the determination. In re Orgeron, 94-458, p. 4 (La.App. 5 Cir. 11/16/94), 646 So.2d 1137, 1139.
On appeal, appellants argue the trial court erred in finding K.M.B. had just cause for his failure to communicate or attempt to communicate with B.E.S. for a *137 period in excess of six months. They point to the testimony that K.M.B. had no contact with the child and had not sent any cards, gifts, or attempted any communication since February 2007, a period of over one year. Appellants argue that K.M.B.'s incarceration and fear that C.S.P. will call the police on his parents is not just cause for his failure to communicate with the child. They contend that K.M.B. has only been a presence in the child's life for approximately six months and she has no bond or attachment to him.
Appellants further argue that the trial court erred in not considering the best interest of the child. Appellants point to a colloquy between the child's maternal grandmother and the trial judge where in the grandmother asked if the standard for allowing adoption was in the best interest of the child and the trial judge responded "that's custody." Appellants then point to testimony regarding the closeness of the relationship between B.E.S. and V.J.P., Jr. and V.J.P., Jr.'s commitment to the child. Appellants contend K.M.B. has had numerous attempts to "get his life together and prove himself as a father" and has failed. They argue he is not now nor has he ever been a real father to B.E.S.
Appellee responds that the trial court's decision was based on credibility determinations and as such is subject to the manifest error standard of review. Appellee contends that based on the testimony, the trial court was convinced of K.M.B.'s substantial commitment to his parental rights by deciding that the adoption was not legally prudent. Appellee argues the appellants failed to meet their burden of proof that the failure of K.M.B. to communicate with B.E.S. was without just cause. Appellee contends the trial court placed little emphasis on the fact that he was incarcerated; rather, the trial court made a rational finding that K.M.B.'s failure to communicate was justified under the circumstances. Appellee further argues the trial court did not have to consider the best interest of the child because it declined to terminate K.M.B.'s parental rights, having found that his failure to communicate was justified.
After careful review of the record in this case, we find the trial court's factual findings to be manifestly erroneous. The record does not support the trial court's finding that appellants failed to prove K.M.B.'s failure to communicate with the child was without just cause. Incarceration is not just cause for failure to communicate. In re Fleming, 01-1405, (La.App. 5 Cir. 4/30/02), 817 So.2d 371. We further find that K.M.B.'s fear that C.S.P. would call the police on his parents is not just cause for failure to communicate. There was no court order preventing K.M.B. from sending cards, gifts, and/or, letters to B.E.S. Further, we find there is no evidence in the record to establish that K.M.B. has a substantial commitment to his parental responsibilities. K.M.B. paid support for a few months during the child's four and one half year life. K.M.B. testified that he is saving money through a work release program to start a business when he gets out of prison and that he plans to buy a house. When asked about financial support of his child, K.M.B. responded that he is "unable to at this time."
Moreover, we find the trial court erred in not considering the best interest of the child. K.M.B. went to jail for breaking into C.S.P.'s house and attempting to hurt her. The other charges are not clear from the record, but it is clear that K.M.B. was placed on probation on two occasions and was sent to jail for violation of probation. As this court has noted previously, adults can take many years to get their lives together which can be very disruptive to their children. See, State v. M.P. 538 So.2d 1112, (La.App. 5 Cir.1989). Our review *138 of the record indicates K.M.B. failed to rebut the presumption that this adoption is in the best interests of the minor child and the trial court erred in determining otherwise.
Finally, appellants contend the trial court erred in failing to appoint an attorney for B.E.S. prior to the hearing in this matter, relying on the holding of In re T.M.L., 06-1442 (La.App. 1 Cir. 12/28/06), 951 So.2d 364. In that case, the First Circuit cited to La. Ch.C. art. 1137(B) which applies to surrender procedure. However, intrafamily adoptions, such as the one here, are governed by La. Ch.C. arts. 1243, et seq. La. Ch.C. art. 1245.1 which provides a right to counsel to the child of a parent whose consent to the adoption is required.[2] However, La. Ch.C. art. 1245 specifies the circumstances under which parental consent for an intrafamily adoption is not required, i.e., "the other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months." As previously stated herein, petitioners met their burden of proving consent of K.M.B. to the adoption was not required in this case, and the trial court therefore did not err in failing to appoint counsel for B.E.S.

Conclusion
For the foregoing reasons, the trial court's judgment dated August 1, 2008 is hereby reversed. The petition for intrafamily adoption of the minor child B.E.S. by V.J.P., Jr. is hereby granted. Each party shall bear its own costs of this appeal.
REVERSED AND RENDERED.
JASMINE, J., dissents with reasons.
JASMINE, J. dissents with reasons.
I disagree with the majority's finding that petitioners met their burden of proving the consent of K.M.B. was not needed for the adoption. Accordingly, I find the trial court erred in failing to appoint an attorney to represent B.E.S. See, In re T.M.L., 06-1142 (La.App. 1 Cir. 12/28/06), 951 So.2d 364. Therefore, I would vacate the trial court judgment and remand for rehearing after appointment of counsel for B.E.S.
NOTES
[1] The initials of the child and the parties are used to protect the identity of the minor child. Uniform Rules, Court of Appeal, Rule 5-2.
[2] This provision was added by Acts 2008, No. 778, § 1, and became effective following the hearing in the present case. Although the statute is not applicable in the present case, it is nevertheless instructive of the legislature's intent to provide for the appointment of counsel only where consent is required.