# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-562


**MARTI ELIZABETH SIMON, ET AL.**

**VERSUS**

**RONALD THERIOT, SHERIFF, ET AL.**


\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## SIXTEENTH JUDICIAL DISTRICT COURT
## PARISH OF ST. MARTIN, NO. 78281
## HONORABLE PAUL J. DEMAHY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

# PHYLLIS M. KEATY
# JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**Carl J. Rachal**
**Simon Law Offices**
**122 Representative Row**
**Lafayette, Louisiana 70508**
**(337) 232-2000**
**Counsel for Plaintiff/Appellant:**
> **Marti Elizabeth Simon, on behalf of her minor children, Haley Nel Richard and Haven Gage Richard**

**Patrick B. McIntire**
**Robin J. Magee**
**Oats & Marino**
**100 East Vermilion Street, Suite 400**
**Lafayette, Louisiana  70501**
**(337) 233-1100**
**Counsel for Defendants/Appellees:**
      **Ronald Theriot, Sheriff**
      **St. Martin Parish Sheriff's Office**

**KEATY, Judge.**

Plaintiff appeals the trial court's judgment granting of a peremptory exception in favor of Defendants. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

The action giving rise to this litigation involves the wrongful death causes of action by the survivors, i.e., the minor children of decedent, Christopher Ted Richard (Ted).

On October 8, 2010, Ted dropped off his girlfriend, Danielle Belle (Belle) and/or her mother, at her home. Thereafter, Belle and/or her mother called 9-1-1 to file a complaint against Ted. Members of the St. Martinville City Police and St. Martin Sheriff's units were subsequently dispatched to the scene and arrived, surrounding the vehicle that Ted was occupying. Ted locked and barricaded himself inside his vehicle. Thereafter, Ted called his father, Larry Richard (Larry), his mother, Cheryl Richard (Cheryl), and his ex-wife, Marti Elizabeth Simon (Simon),[1] on his cell phone wherein he indicated he intended to kill himself.

Over the next few hours, Ted made several phone calls to Larry, Cheryl, and Simon. During one of these calls to his father, Larry told Ted that he was "on his way" and to "not do anything stupid." Ted told his father that he would not shoot himself or do "anything stupid" and that he would wait for his father to arrive at the crisis scene.

Major Ginny Higgins (Major Higgins) was the head crisis negotiator with the St. Martin Parish Sheriff's Office and was in charge of the crisis negotiations with Ted. Major Higgins told Larry, Cheryl, and Simon that she did not want them

---

[1] Simon and Ted have two minor children, Haley Nel Richard and Haven Gage Richard.

having any further communications with Ted as it would interfere with their handling of the crisis negotiations. Major Higgins and her assistant, Deputy Allison Boudreaux (Deputy Boudreaux), also told them that if they spoke by telephone with Ted, they would be criminally charged with obstruction of justice and arrested for interfering with their negotiations. After these conversations with Major Higgins and Deputy Boudreaux, Ted made numerous cell phone calls to Larry, Cheryl, and Simon. Due to the threat of arrest and incarceration, all of these cell phone calls went unanswered. Ted subsequently shot and killed himself while in his own vehicle.[2]

Simon, on behalf of her minor children, Haley Nel Richard and Haven Gage Richard, thereafter filed a Petition for Damages against Defendants, Ronald Theriot, in his capacity as St. Martin Parish Sheriff, and the St. Martin Parish Sheriff's Office. Simon's petition alleged that Defendants were negligent and/or at fault in causing Ted's death. Defendants responded by filing an answer with general denials and a peremptory exception for failure to state a cause of action. In its initial judgment in favor of Defendants, the trial court stated that Simon failed to state a cause of action as her petition failed to allege facts which would impose a duty upon Defendants. The trial court granted Defendants' exception but also allowed Simon thirty days to amend her petition to state a cause of action. After Simon filed an amended petition for damages, Defendants re-urged their original exception of no cause of action. The trial court ruled in favor of Defendants, granted the exception, and dismissed Simon's lawsuit with prejudice.

---

[2] The facts stated above are the same facts alleged in Simon's petition and supplemental and amended petition.

Simon is now before this court asserting that the trial court committed reversible error and abused its discretion by failing to accept the allegations and facts in her original and supplemental petition for damages as true and correct and in granting Defendants' peremptory exception of no cause of action on the grounds that Simon failed to allege an affirmative duty prohibiting family members from participating in crisis negotiations when a person is threatening suicide.

## LAW

"In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a *de novo* review because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition." *Ramey v. DeCaire*, 03-1299, pp. 7-8 (La. 3/19/04), 869 So.2d 114, 119.

## DISCUSSION

### I.    Simon's Mis-Reading of the Trial Court's Judgment

In her assignment of error, Simon asserts two issues:  (a) that the trial court failed to accept the allegations of fact in the original and supplemental petitions as true and (b) that the trial court granted the exception of no cause of action because Simon did not allege an affirmative duty "prohibiting family members from participating in crisis negotiations when a person is threatening suicide."  In opposition, Defendants contend that Simon is mistaken on both counts.

As used in the context of the peremptory exception, a cause of action refers to the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant.  *Ramey*, 869 So.2d 114.  The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the

facts alleged in the pleading. *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.,* 616 So.2d 1234, 1235 (La.1993). "On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La.Code Civ.P. art. 931. Additionally, "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." *Id.* Consequently, "the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought." *Jackson v. State ex rel. Dep't of Corr.*, 00-2882, pp. 3-4 (La. 5/15/01), 785 So.2d 803, 806.

In her original petition, Simon alleged the same facts as stated in the factual section above. She further alleged that Defendants were at fault by:

A. Negligently failing to utilize properly trained negotiators;

B. Negligently failing to properly train the negotiators in question;

C. Negligently failing to follow proper accepted police training and procedures for crisis negotiations for dealing with suicidal individuals such as Ted Richard;

D. Negligently failing to allow the deceased's father, mother and ex-wife from assisting in the crisis negotiations;

E. Other such actions and/or inactions in failing to see and/or do what should have been done under the circumstances in order to avoid and/or prevent the death of Ted Richard; and

F. Any and all other acts of negligence and/or fault which may be proven at the trial of this matter.

As mentioned above, the trial court initially ruled in favor of Defendants and allowed Simon thirty days to amend her petition to state a cause of action. In its written reasons for judgment dated June 13, 2012, the trial court stated that "[for]

4

the purpose of the exception the following facts in the petition are considered true." The trial court then recited the facts as alleged by Simon in her petition. The trial court further stated:

> Plaintiff has cited no authority which imposes upon deputies, negotiating with a person threatening suicide, an obligation to allow untrained family members to participate in the negotiations. This court has found no such authority. Plaintiff has failed to allege facts which impose a duty upon the Sheriff's deputies or the Sheriff; therefore, plaintiff has failed to state a cause of action.

Simon subsequently filed an amended and supplemental petition. She re-alleged the same facts contained in her original petition. She further alleged that Defendants were at fault by:

a. Failing to recognize and/or not ignore the risks of suicide, which were foreseeable;

b. Failing to take reasonable steps necessary to prevent said suicide;

c. Once it became clear that there was a high risk of suicide, by failing to adhere to their duty to do everything possible to prevent such suicide, including, but not limited to, allowing Ted Richard's family to speak with him to attempt to circumvent, deter and/or prevent such suicide;

d. By failing to act reasonably and prudently under the circumstances;

e. By acting carelessly and recklessly under the circumstances; and

f. Any and all other acts of negligence which may be proven at the trial of this matter.

Despite the supplemental and amended petition, the trial court again granted the Defendants' peremptory exception on December 15, 2012. In its oral reasons for judgment dated November 16, 2012, the trial court stated that it has to "accept the facts as true in deciding." The trial court further stated that it did not see that a legal duty existed on the part of the Sheriff.

5

Contrary to Simon's argument that the trial court was demanding evidentiary proof and based upon the above oral and written reasons for judgment, we find that the trial court did accept the allegations of the petition and amending and supplemental petition as true for purposes of the exception. The trial court simply found that under the circumstances alleged, i.e., an armed, barricaded, and suicidal individual, the deputies did not owe any duty to Simon that would make them liable for damages if the suicide took place.

Additionally, the trial court did not grant the exception simply because Simon failed to allege that there was an affirmative duty. Allegation of a duty would not be a fact but would be a legal conclusion that is to be disregarded when analyzing the petition. See *Brewer v. J.B. Hunt Transp., Inc.*, 09-1408, 09-1428 (La. 3/16/10), 35 So.3d 230 (whether a duty is owed is a question of law); s*ee also Montalvo v. Sondes*, 93-2813 (La. 5/23/94), 637 So.2d 127 (allegations in counter-claim that original suit was frivolous and in bad faith were mere conclusions when unsupported by facts). What the trial court found was that "[p]laintiff has failed to allege facts which impose a duty upon the Sheriff's deputies." Again, the facts alleged in this case establish that the deputies were confronted with an armed, barricaded, and suicidal individual who was never in custody at any time during the encounter. The trial court correctly concluded that, under these circumstances, no duty arose on the part of the Sheriff and the deputies. The exception was granted, not because of a failure to allege a duty, but because under the facts as pled, viewed in the light most favorable to Simon, no duty arose as a matter of law.

Simon correctly notes that the trial court found that the Sheriff had no legal duty under the facts of this case to assure the survival of Ted. Simon, however, argues that duty was not the issue. Rather, Simon argues that the issue was

whether, under La.Civ.Code art. 2315, the deputies "were negligent in the handling of the suicide situation." We find that Simon is mistaken. The issue raised by the exception was whether a duty existed under the circumstances alleged. It is axiomatic that in all negligence cases, Louisiana courts have adopted a duty-risk analysis to determine if liability exists under the facts of a particular case. *Brewer v. J.B. Hunt Transp., Inc.,* 09-1408, 09-1428 (La. 3/16/10), 35 So.3d 230. The first element of a duty-risk analysis is whether "the defendant had a duty to conform his or her conduct to a specific standard of care." *Id.* at 240. The existence of a legal duty is a question of law, and it is appropriate for resolution by an exception of no cause of action. *Id.*

Thus, we find that Simon mis-read the trial court's judgment. Accordingly, we find that Simon's assignment of error is without merit for the reasons stated above and below.

## II. The Trial Court's Ruling Regarding the Supplemental and Amended Petition

Despite Simon's protestations, the issue in this case is whether Louisiana law imposes a duty on the Sheriff to allow family members to participate in crisis negotiations, or more generally, to assure the survival of a suicidal man who has locked himself in a car with a loaded shotgun pointed at his head. We find that it does not.

As mentioned above, the existence of a duty is a question of law. *Hardy v. Bowie*, 99-2821 (La. 9/8/99), 744 So.2d 606. "The inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim." *Id.* at 614. In *Hardy*, police officers were responding to the sound of a gunshot within a crowd. One of the issues was whether they

7

owed a duty to bystanders, and particularly the decedent who was shot soon after the police began their search for the gun-wielding assailant. The court noted that "[g]enerally, a 'police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action.'" *Id*. at 614 (quoting *Prattini v. Whorton*, 326 So.2d 576 (La.App. 4 Cir. 1976)). Citing *Mathieu v. Imperial Toy Corp*., 94-952 (La. 11/30/94), 646 So.2d 318, the *Hardy* court observed that police officers are "held to choosing a course of action which is reasonable under the circumstances." *Hardy,* 744 So.2d. at 614.

We note that the above cases have acknowledged tort protection for the benefit of innocent bystanders and for the protection of suspects from battery by the police. Nevertheless, Simon has not provided jurisprudence which stands for the proposition that there exists a duty upon police officers to allow family members to participate in crisis negotiations. Likewise, we have been unable to find jurisprudence to that effect.

The Louisiana Supreme Court has upheld an exception of no cause of action in a slightly different wrongful death by suicide claim. *See Ramey*, 869 So.2d 114. In *Ramey*, the decedent physician committed suicide after being told over the phone that he had failed a random drug screen, knowing that the drug test would likely cost him his medical license. The plaintiffs sued the people who had advised the decedent of the test result for negligently failing to take precautions against the risk of suicide when such risk was foreseeable under the circumstances. The supreme court granted the exception of no cause of action, though it remanded the case to allow plaintiffs another opportunity to amend to cure the exception. Justice Knoll, concurring with the holding of the failure to state a cause of action and dissenting from the decision to remand rather than dismiss the suit, noted that the

8

pleadings did not articulate any legal duty given "the strong policy considerations against assigning delictual responsibility for the suicidal acts of another, and the great reluctance of our courts to extend such liability, *especially in non-custodial circumstances*." *Id*. at 120. Justice Knoll also noted the highly speculative nature of the claim and the general rule that "[p]leadings which establish only possibility, speculation, or unsupported probability do not suffice to establish a cause of action." *Id*. at 120-21.

Other states have addressed the specific issue of police liability in the context of an armed and suicidal individual. They have found no duty to allow participation by family members in the crisis negotiations and have found no duty to assure survival of the suicidal person at all. In *Ferreira v. City of East Providence*, 568 F.Supp.2d 197 (D.R.I. 2008), Patricia Ferreira shot herself while barricaded in a car. Her suicide came after her brother, against police orders, had draped himself over the windshield of the car, from which he had to be removed and placed in handcuffs in a police cruiser. In *Ferreira*, as in the present case, the allegation was that if only the police had allowed the brother to continue the dialogue, the suicide could have been prevented. The court noted that the police were justified in removing the brother from the vicinity of the car and that to do otherwise "would have placed Ferreira [the brother], who was in a stressed and upset state, effectively in charge of the situation." *Id*. at 207. The court found that the issue was whether the officers owed any duty to protect Patricia from herself. It found that they did not.

In *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 80 Cal. Rptr. 2d 196 (1998), the court found that officers responding to a situation involving a person threatening suicide with a loaded weapon have no legal duty of care that would

expose them to liability if their conduct fails to prevent the suicide from being carried out. In *Adams*, the court noted that police officers in the presence of an armed and suicidal person are concerned with several interests: the physical safety of the community, including themselves, other citizens, and family members; the physical safety of the suicidal person, and; the psychological sanctity of family members. The court held that "imposing liability for the negligent handling of a threatened suicide improperly elevates the interests in preserving the life of the person threatening suicide over the interests of public safety and the physical safety of police officers." *Id.* at 272.

In the present case, Simon contends that the out-of-state cases examined above did not involve exceptions of no cause of action. We note, however, that these cases were decided as a matter of law based on the issue of whether to recognize a legal claim under circumstances virtually identical to the case at hand, i.e., police dealing with an armed and suicidal individual. Both cases held that no such cause of action should be allowed.

Simon has likewise cited cases in support of her assignment of error. In *Garza v Delta Tau Delta Fraternity Nat'l*, 06-698 (La. App. 1 Cir. 3/28/07), an unpublished decision, the allegation was that a police officer refused to take the complaint of a rape victim, told her that no official action would be taken against the alleged rapist, and told her that she would be sued for defamation if she continued to complain. The gist of the case was that the officer encountered a non-suicidal person and helped drive her to suicide. In the present case, however, the petition and supplemental and amended petition makes it clear that the suicidal person in this case was already barricaded in a car with a loaded gun threatening

10

suicide when the police encountered him.  Thus, the circumstances in this case are easily distinguishable from *Garza*.

Simon also cites the case of *White v Walker*, 950 F.2d 972 (5th Cir. 1991), a Mississippi federal case.  The allegation in *White* was that the suicidal person was never in contemplation of taking his own life until the encounter with the officer.  The court upheld the exclusion of a psychologist's testimony to the effect that the officer's conduct contributed to the suicide.  It reversed and remanded solely on the issue of whether there was a Fourth Amendment violation of the suicidal person's rights as a result of the traffic stop that began the encounter.  The issue turned on whether there was a violation of Mississippi traffic law.  All other claims were dismissed.  We find that this case does not stand for the proposition that officers confronted with an armed, barricaded, and suicidal individual have a duty to save the life of the suicidal individual which trumps their duty to others at risk.

Finally, Simon cites *Gray v City of Detroit*, 399 F.3d 612 (6th Cir. 2005), where the decedent committed suicide while in a police cell at a hospital.  Since *Gray* committed suicide while in police custody, *Gray* is distinguishable from the facts in the present case as Ted was not in custody at the time of his suicide.

Thus, Simon's assignment of error is without merit.

### DECREE

The judgment rendered by the trial court is affirmed.  All costs of this appeal are assessed against Marti Elizabeth Simon, on behalf of her minor children, Haley Nel Richard and Haven Gage Richard.

**AFFIRMED.**

11