NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0644

THOMAS PIKE BARKERDING

VERSUS

JACQUES BEZOU, SR., JACQUES BEZOU, JR.,
ERICA HYLA, AND THE BEZOU LAW FIRM, LLC

*Judgment Rendered:* **MAR 0 8 2022**

* * * * * * * *

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 2020-12799, Division E

The Honorable William H. Burris, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Thomas Pike Barkerding<br>Covington, Louisiana | Plaintiff/Appellant<br>Pro Se |
| Richard E. King<br>Matthew T. Biggers<br>New Orleans, Louisiana | Counsel for Defendants/Appellees<br>Jacques Bezou, Sr., Jacques Bezou,<br>Jr., Erica Hyla, and The Bezou Law<br>Firm |

* * * * * * * *

BEFORE: WELCH, THERIOT, AND CHUTZ, JJ.

**THERIOT, J.**

In this suit arising from claims of legal malpractice, the plaintiff appeals a judgment dismissing his suit with prejudice on the basis of peremption. We affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Thomas Pike Barkerding, filed suit against his former attorneys on July 6, 2020. The factual allegations giving rise to the claim, as set forth in Barkerding's petitions, are as follows:

On May 23, 2017, plaintiff, Thomas Pike Barkerding, retained The Bezou Law Firm to serve as co-counsel along with his attorney, John Alden Meade, in ongoing litigation against a number of defendants, including another law firm. On March 12, 2018, Barkerding signed an "updated and consolidated" engagement agreement with Meade and The Bezou Law Firm attorneys. Barkerding alleged that the March 12, 2018 agreement contained a clause prohibiting the recording of conversations with any attorneys and non-attorney employees without first obtaining their written consent. The clause further provided that a breach of the provision would serve as good cause for the immediate termination of the agreement and obligate the client to pay reasonable attorney fees incurred by the firm to enforce the provision.

In time, Barkerding became dissatisfied with The Bezou Law Firm's representation and the progress of the litigation. His complaints included discovery delays, the attorneys' failure to recognize the value of evidence Barkerding identified, and the attorneys pushing him to accept unfavorable settlement terms. In his frustration, he began "secretly record[ing]" conversations with the attorneys. On September 5, 2018, Barkerding "bumped into" one of his attorneys, Jacques Bezou, Sr., at a coffee shop and decided to take the opportunity to question him about the progress of the suit. Barkerding secretly recorded his conversation with Bezou, Sr. "for reference," since he expected "vague and

confusing deflection" of his questions. Barkerding alleges that in this recorded conversation, Bezou, Sr. acknowledged the potential relevance to the litigation of evidence Barkerding had discovered. On October 5, 2018, Barkerding had another fortuitous encounter with one of his attorneys at the same coffee shop. According to Barkerding, when Jacques Bezou, Jr. entered the coffee shop and saw him sitting there, he approached Barkerding's table, sat down, and pushed Barkerding's laptop shut. Barkerding alleges that Bezou, Jr. did this to prevent Barkerding from recording their conversation, but "Barkerding's fingers kept the laptop from closing completely, allowing him to inconspicuously engage the keyboard shortcut to initiate an audio recording." Barkerding alleges that in the recorded conversation, he and Bezou, Jr. argued about the scope of The Bezou Law Firm's representation. Barkerding alleges that Bezou, Jr. mentioned Barkerding's alleged plan to fire his attorneys, encouraged him to do so, and finally informed Barkerding that he (Bezou, Jr.) could withdraw from the representation if he chose to do so.

Barkerding alleges that several days after this meeting with Bezou, Jr., he sent a letter to Meade, Bezou, Jr., and others, stating that Bezou, Jr. had quit on October 5. Barkerding alleges that Bezou, Jr. responded to all parties copied on the letter, stating that Barkerding's accusations constituted an irreconcilable conflict. Barkerding alleges that the Bezou Law Firm formally withdrew from the representation on October 10, 2018.

According to Barkerding, after The Bezou Law Firm withdrew from the case, Meade advised him that unless he could find a competent attorney willing to "take over Jacques's role," he should reconsider a settlement offer that he had previously rejected regarding one aspect of his lawsuit. On this advice, Barkerding reluctantly accepted the settlement agreement.

On January 18, 2019, upset about an unfavorable appellate court ruling in his remaining litigation, Barkerding "emailed [his secret recordings] to his ex-lawyers in a bitter send-off." Then, months later, Barkerding emailed Bezou, Jr. "a sincere request to reduce . . . part of their fee," pointing to "Counsel's premature withdrawal and subsequent failure to do their job." According to Barkerding, a heated email exchange followed. In a July 5, 2019 email, in reference to Barkerding's statements about his withdrawal being improper, Bezou, Jr. allegedly pointed to the provision of the March 2018 engagement agreement prohibiting voice recordings and allowing for immediate termination of the agreement for violation of the provision.

Barkerding alleges that on July 6, 2019, he reviewed Rule 1.8(h)(1) of the Louisiana Rules of Professional Conduct regarding conflicts of interest, which provides that a lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement. Barkerding suspected that the provision prohibiting voice recording in the March 2018 engagement contract violated this rule and alleges that he emailed Bezou, Jr. again on July 6, 2019 to inform him of this belief.

On July 6, 2020, Barkerding filed a Petition for Legal Malpractice, Breach of Fiduciary Duty, and Fraudulent Misrepresentation against The Bezou Law Firm and its attorneys Bezou, Sr., Bezou, Jr., and Erica Hyla.[1] Barkerding's allegations, although lengthy and confusing, appear to be that the defendants violated the Rules of Professional Conduct by impermissibly limiting their potential liability for legal malpractice by including the voice recording prohibition in the engagement agreement, failed to conduct discovery to his satisfaction, ignored evidence that he

---

[1] Barkerding also filed a "First Amended and Restated Petition for Legal Malpractice, Breach of Fiduciary Duty, and Fraudulent Misrepresentation" on July 13, 2020, which simply provided more detail about his claims.

brought to their attention, pushed him to accept unfavorable settlement terms, and improperly withdrew from the representation.

Defendants filed a peremptory exception raising the objections of prescription and peremption. A hearing was held on the exception on January 6, 2021. No evidence was introduced by either party. Following argument by both parties, the trial court sustained the exceptions and dismissed Barkerding's petition with prejudice. Barkerding appealed, arguing that the trial court erred in dismissing his claims as untimely.

## DISCUSSION

Ordinarily, the party pleading prescription bears the burden of proving the claim has prescribed. However, when the face of the petition reveals that the plaintiffs' claims have prescribed, the burden shifts to the plaintiffs to demonstrate that prescription was suspended or interrupted. *Cook v. Rigby*, 2019-1475, p. 3 (La.App. 1 Cir. 11/25/20), 316 So.3d 482, 485, *writ denied sub nom.*, *Soileau v. Rigby*, 2020-01493 (La. 3/9/21), 312 So.3d 588. When, as in this case, no evidence is introduced at the hearing to support or controvert the exception of prescription, the exception must be decided upon facts alleged in the petition with all allegations accepted as true. See La. C.C.P. art. 931; *Cook*, 2019-1472 at p. 4, 316 So.3d at 482. If no evidence is introduced to support or controvert the exception, the manifest error standard of review does not apply, and the appellate court's role is to determine whether the trial court's ruling was legally correct. *Harris v. Breaud*, 2017-0421, p. 9 (La.App. 1 Cir. 2/27/18), 243 So.3d 572, 578-579.

Louisiana Revised Statutes 9:5605 provides the applicable periods of limitation for actions for legal malpractice:

A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association,

5

enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.

D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

Thus, the applicable time limitations on legal malpractice actions are one year from the date of the alleged act, omission, or neglect, or one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, or, at the latest, within three years from the date of the alleged act, omission, or neglect. La. R.S. 9:5605(A). In other words, the latest one can file a

legal malpractice action is three years from the date of the alleged act of malpractice, or one year from the date of discovery of the alleged act of malpractice, whichever occurs first. *Straub v. Richardson*, 2011-1689, p. 6 (La.App. 1 Cir. 5/2/12), 92 So.3d 548, 553, *writ denied*, 2012-1212 (La. 9/21/12), 98 So. 3d 341. Prescription commences to run when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice. *Straub*, 2011-1689 at p. 7, 92 So.3d at 553. The standard imposed is that of a reasonable man – any plaintiff who had knowledge of facts that would place a reasonable man on notice that malpractice may have been committed shall be held to have been subject to the commencement of prescription by virtue of such knowledge even though he asserts a limited ability to comprehend and evaluate the facts. *Paternostro v. LaRocca*, 2001-0333, p. 5 (La.App. 1 Cir. 3/28/02), 813 So.2d 630, 634. The focus is on the appropriateness of the claimant's actions or inactions; therefore, the inquiry becomes when would a reasonable man have been on notice that malpractice may have been committed. *Id.*

The last act of malpractice alleged by Barkerding was the improper withdrawal from the case for allegedly false reasons, which Barkerding suggested placed him at a disadvantage in his pending litigation and forced him to accept an unfavorable settlement agreement. The improper withdrawal was alleged to have occurred on October 10, 2018, almost two years before Barkerding's petition was filed on July 6, 2020. Barkerding does not allege that he was not aware of the improper act at the time it happened, and in fact alleges that he believed at the time that his recordings proved misconduct, i.e., that the attorneys' stated reason for withdrawal was false. In his petition, Barkerding states that although he "believed his recordings proved misconduct, he never used them to pursue legal action against his attorneys due to his reliance on the Voice Recordings Prohibited

7

("VRP") clause in the 2018/03/02 contract, which supposedly made them useless." Thus, Barkerding seems to argue that he was aware that malpractice may have been committed, but was unaware that he would be able to use evidence in his possession to prove the acts of malpractice. As noted above, prescription commences to run when a plaintiff has knowledge of facts that would place a reasonable man on notice that malpractice may have been committed, regardless of his alleged limited ability to comprehend and evaluate the facts. *Paternostro*, 2001-0333 at p. 5, 813 So.2d at 634. Thus, prescription began to run on Barkerding's claims at the latest on October 10, 2018, and these claims were time-barred under La. R.S. 9:5605 when Barkerding filed suit on July 6, 2020.

Barkerding also argues that his claims are not prescribed because Bezou, Jr.'s reference to the voice recording provision in July 2019 was "a fraudulent attempt to conceal or mislead" Barkerding to prevent him from learning of the alleged invalidity of the clause, which led Barkerding to believe that he could not use the evidence in his possession to prove the "acts of malpractice he discovered in October 2018."

The Louisiana Supreme Court has held that both the one-year and three-year time periods set forth in La. R.S. 9:5605(A) are inapplicable to a claim of legal malpractice once fraud has been established. See La. R.S. 9:5605(E); *Lomont v. Bennett*, 2014-2483, p. 24 (La. 6/30/15), 172 So.3d 620, 636. Fraud, which would prevent the application of the time periods set forth in La. R.S. 9:5605(A), is defined in La. C.C. art. 1953 as a misrepresentation or a suppression of the truth, made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other, and may also result from silence or inaction. Such fraud may be triggered by either a fraudulent act of malpractice by the attorney or a post-malpractice fraudulent concealment of the act. *Murray v. Ward*, 2018-1371, p. 6 (La.App. 1 Cir. 6/10/19), 280 So.3d 625, 630, <u>citing</u>

*Lomont v. Bennett*, 2014-2483 at pp. 9-10, 172 So.3d at 627-28. Barkerding argues that when Bezou, Jr. allegedly mentioned the voice recording clause in their July 2019 email exchange regarding the October 2018 withdrawal from representation, this led Barkerding to believe that he would be unable to use his secret recordings to prove his claims of malpractice. Barkerding does not allege that Bezou, Jr.'s actions constituted a concealment of the malpractice; rather, he alleges that he was aware of the malpractice, but was misled about his ability to use his secret recordings as evidence in a malpractice suit. These allegations in Barkerding's petition do not establish fraud for purposes of La. R.S. 9:5605(E). As such, the time limitations set forth in La. R.S. 9:5605 remain applicable, and Barkerding's claims are barred.

## CONCLUSION

For the reasons set forth herein, the January 28, 2021 judgment of the trial court dismissing Thomas Pike Barkerding's petition with prejudice is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Thomas Pike Barkerding.

**AFFIRMED.**