WIL III,
by
PMc by

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0157

BLUE CUBE OPERATIONS, LLC

VERSUS

ASSUMPTION PARISH BOARD OF REVIEW;
WAYNE P. BLANCHARD, IN HIS CAPACITY AS
ASSESSOR FOR ASSUMPTION PARISH;
AND THE LOUISIANA TAX COMMISSION

*Judgment Rendered:* **NOV 0 6 2020**

********

Appealed from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit No. C677797

The Honorable Wilson E. Fields, Judge Presiding

********

| | |
|---|---|
| Phyllis D. Sims<br>Erich P. Rapp<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant<br>Blue Cube Operations, LLC |
| Brian A. Eddington<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Wayne P. Blanchard, Assessor for<br>Assumption Parish |

********

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

Guidry, J. Concurs.

**LANIER, J.**

Blue Cube Operations LLC ("Blue Cube") appeals the October 17, 2019 judgment of the district court judgment affirming the decision of the Louisiana Tax Commission ("the Commission"). In a decision rendered in December 2018, the Commission affirmed the ruling of the Assumption Parish Board of Review ("the Board"), which had upheld the correctness of an *ad valorem* tax assessment by Assumption Parish Assessor, Wayne P. Blanchard ("the Assessor"). For the reasons that follow, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Blue Cube is engaged in brine mining operations in Assumption Parish. The instant dispute concerns the 2017 *ad valorem* tax valuation and assessment of three of Blue Cube's active brine wells and related salt caverns located in Assumption Parish. Blue Cube's three wells are located over a salt deposit. As water is injected into the ground, brine is extracted, and a void is created as the salt is dissolved. The brine produced from the wells is pumped by pipelines to Blue Cube's chlorine plant in Plaquemine, Louisiana, where the "brine is electrolyzed and converted to chlorine, caustic, and hydrogen. And then, those are used as raw materials in other products." The salt caverns are produced as a result of the brine mining operation. Blue Cube does not store, nor does it intend to store or have the legal right to store, any hydrocarbons or any other products in the salt caverns. The benefit to Blue Cube is the salt that is extracted, not the cavern that results from the extraction of the salt.

For the 2017 tax year, the values in dispute, as assigned by the Assessor to Blue Cube's brine wells and caverns, reflect an assessed value of $1,355,590.00 and a fair market value of $9,037,267.00. Based on these values, Assumption Parish Sheriff Leland Falcon, in his capacity as Ex-Officio Tax Collector, sent a 2017 Tax Statement to Blue Cube reflecting total taxes due in the amount of

$131,790.45. Thereafter, Blue Cube made two payments to Sheriff Falcon in December 2017 totaling $131,790.45. Blue Cube paid $2,870.33 for the undisputed portion of the taxes, while $128,920.12 was paid under protest, to be held in escrow, pending the correctness challenge it had filed with the Commission.

Pursuant to the procedures established by the Louisiana Administrative Procedure Act, La. R.S. 49:950, et seq., Blue Cube first petitioned the Board for correction of the Assessor's valuation of the three brine wells and caverns at issue. Blue Cube challenged the assessment, requesting a fair market value of $196,827.00 for the brine wells based on Chapter 9 of the Commission's Rules and Regulations, rather than on Chapter 25 as was utilized by the Assessor. Blue Cube further argued that the associated caverns were not used for, nor intended to be used for, commercial storage and, therefore, do not have any value.

The Board upheld the Assessor's valuation, after which Blue Cube appealed to the Commission. Blue Cube maintained throughout its challenge before the Board and the Commission that the brine wells should be valued and assessed in accordance with Chapter 9 of the Commission's Rules and Regulations, that the caverns were not taxable property separate from the land, and that the salt caverns were merely holes in the land that had no value and were not subject to taxation.

The Commission heard the appeal on August 22, 2018, and, after taking the matter under advisement, affirmed the ruling of the Board in December 2018, bearing Docket Number 17-22007-001 ("2017 Tax Appeal"). Thereafter, Blue Cube sought judicial review of the Commission's decision in the 19th Judicial District, and a hearing was held on September 23, 2019. The matter was argued by counsel and submitted to the district court, whereupon the district court upheld the decision of the Commission. A judgment in accordance with the district court's ruling was signed on October 17, 2019.

This appeal by Blue Cube followed, wherein Blue Cube assigned the following specifications of error:

1.   The Commission erred in affirming the Assessor's value and assessment of the [brine wells] under Chapter 25 of the Commission's Rules and Regulations.

2.   The Commission erred in affirming the Assessor's determination that the [salt caverns] have some commercial use and/or contain personal property subject to assessment separate and apart from the land.

3.   The Commission erred in failing to find that the fair market value of the disputed property was [$196,827.00], as requested and reported by Blue Cube, similar to the Commission's decision for the prior year (2016 Tax Decision).

## STANDARD OF REVIEW

As stated in La. Const. Art. VII, § 18(A), "[p]roperty subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which ... shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property." Each assessor is authorized by La. Const. Art. VII, § 18(D), to "determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor." The fair market value shall be determined in accordance with criteria established by law, which must be uniformly applied throughout the state. La. Const. Art. VII, § 18(D); La. R.S. 47:2323(A).

Louisiana Constitution Article VII, §18(E) provides that "[t]he correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law." See also La. R.S. 47:1992, 47:1989, and 47:1998. Judicial review of the correctness of the assessment is authorized by La. R.S. 47:1998(A). The extent of that review is

4

governed by the Administrative Procedure Act, La. R.S. 49:964(F) and (G). **Axiall, LLC v. Assumption Parish Board of Review**, 2018-0542 (La. App. 1 Cir. 12/30/19), ___ So.3d ___, ___, 2019 WL 7343414, *3. Review is confined to the administrative record established before the Commission. La. R.S. 49:964(F); **Williams v. Opportunity Homes Limited Partnership**, 2017-0955 (La. 3/13/18), 240 So.3d 161, 166.

Pursuant to La. R.S. 49:964(G), the district court may affirm or remand the decision of an agency, while the reversal or modification of that decision requires that additional conditions be met. **Axiall, LLC,** ___ So.3d at ___, 2019 WL 7343414 at *3. As set forth in La. R.S. 49:964(G), we may reverse or modify the decision of the agency only if substantial rights of the party seeking review have been prejudiced because the administrative findings, inferences, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. The reviewing court shall make its own determination and conclusions of fact by a preponderance of evidence, based upon its own evaluation of the record reviewed in its entirety upon judicial review. La. R.S. 49:964(G); **Williams**, 240 So.3d at 166.

When reviewing a final decision of an agency, the district court functions as an appellate court. **EOP New Orleans, L.L.C. v. Louisiana Tax Com'n**, 2001-2966 (La. App. 1 Cir. 8/14/02), 831 So.2d 1005, 1008, writ denied, 2002-2395 (La. 11/27/02), 831 So.2d 286. An aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate court of appeal. See La. R.S. 49:965. On review of the district court's judgment, no deference is owed by

5

the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of a court of appeal. **Comm-Care Corp. v. Louisiana Tax Com'n**, 99-0709 (La. App. 1 Cir. 6/23/00), 762 So.2d 770, 773, writ denied, 2000-2271 (La. 10/27/00), 772 So.2d 656. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court. **EXCELth, Inc. v. State through Department of Health and Hospitals**, 2017-0363 (La. App. 1 Cir. 12/19/17), 234 So.3d 160, 165-166, writ denied, 2018-0113 (La. 3/9/18), 238 So.3d 453. Accordingly, this court will conduct its own independent review of the administrative record in accordance with the standards provided in La. R.S. 49:964(G).

## DISCUSSION

At the beginning of the August 22, 2018 hearing before the Commission in the 2017 Tax Appeal, the parties stipulated that in lieu of live testimony, Blue Cube's exhibits 1 through 29 would be admitted into evidence without objection. Counsel for Blue Cube stated:

> That book of exhibits includes the transcript from a previous hearing that Blue Cube had against the same opposing party on December 13, 2017 [Docket Number 16-22007-001 ("2016 Tax Appeal")] in which witnesses were asked about matters including 2017, even though the hearing was about 2016. ...
>
> And we would propose and stipulate that that testimony applies to and would be considered by the Commission, along with all the other exhibits as our evidence in lieu of live testimony at this hearing with one minor addition; and that is that we would stipulate that our tax consultant, Charles Zatarain would testify for 2017 that the fair market value [of the brine wells] calculated under Chapter 9 is [$196,827.00] and that the assessed value would be [$29,525.00]. And we would ask that that be part of our stipulation because that differs from the prior year's testimony as to [the] amount.

Counsel for the Assessor agreed with Blue Cube's stipulation, noting that the Assessor's numbers also differed for the 2017 tax year and that the 2017 fair

6

market value was $9,037,267.00. The parties also agreed to include a transcript and testimony from Rodney Kret from a prior Commission hearing.[1] Finally, the parties agreed that the issues before the Commission were the same as in the prior hearing, *i.e.*, simply whether the brine wells should be taxed under Chapter 25, as argued by the Assessor, or Chapter 9, as argued by Blue Cube, and whether the value of the caverns should be zero, as the Commission ruled following the 2016 Tax Appeal.

After taking the matter under advisement, the Commission rendered its decision, affirming the ruling of the Board as follows: "Based on the foregoing, and applying its expertise, technical competence, specialized knowledge, and based upon the entirety of the record, the Commission does hereby affirm the decision of the [Board], which upheld the Assessor's fair market value of the subject cavern and wells ... which was ... [$9,037,267.00]." Following review in the 19th Judicial District Court, the Commission's decision was upheld in an October 17, 2019 judgment, which is now before us on review.

As previously indicated, the crux of this case is whether the brine wells should be taxed under Chapter 25, as argued by the Assessor, or Chapter 9, as argued by Blue Cube, and whether the caverns are subject to taxation. This court was faced with a similar legal and factual scenario in **Axiall, LLC**, *supra*, which involved the assessment of six brine wells and caverns in Assumption Parish. Therein, the Assessor based its valuation of the six brine wells on Chapter 25 of the Commission's Rules and Regulations instead of Chapter 9, as requested by Axiall, LLC. The Assessor also taxed the caverns separately from the wells as commercial improvements. On review, the Commission ruled that all six brine wells should be valued in accordance with the provisions set forth in Chapter 9, not

---

[1] Rodney Kret's testimony before the Commission related to the taxation of six brine wells and caverns owned by Axiall, LLC in Assumption Parish. This hearing precipitated the appeal in **Axiall, LLC**, *supra*.

Chapter 25 as advanced by the Assessor, and that the caverns at issue had no value

because they either could not be used for any commercial purpose or were legally

unusable. The district court reversed and vacated the Commission, thereby

reinstating the Board's ruling and affirming the Assessor's valuations. **Axiall,**

**LLC,** ___ So.3d at ___, 2019 WL 7343414 at *3.

In reversing the district court and reinstating the Commission's decision that

the brine wells should be valued under Chapter 9 rather than Chapter 25 and that

the caverns had no value, this court noted as follows:

> The text of Chapter 9 of the Commission's Rules and Regulations provides the guidelines for determining the fair market value of various types of wells. The wells identified in Chapter 9 include injection wells, which are described as "wells completed as single or wells reclassified by the Louisiana Department of Conservation after a conversion of another well. Wells are used for gas and water injection for production purposes, also used for disposal wells." LAC 61:V.901. As explained by the facts herein, water is injected into the brine wells for the purpose of producing brine. This clearly fits within the description of injection wells included in Chapter 9.
>
> In addition to the fact that Chapter 9 specifically includes service wells, including injection wells, the Commission's Property Classification Standards Regulations define types of property, including oil and gas wells, under the broader classification of personal property. The standards include a broad class description that is broken down further into a "Sub-Class Description," and finally, a definition of the class is provided. LAC 61:V.304B. The relevant class description here is "Oil and Gas Wells." One sub-class description for oil and gas wells includes injection wells and service wells. Injection wells and service wells are defined as "[i]njection wells, service wells, saltwater disposal, **brine wells**, water wells." *Id.* (emphasis added). Of note, brine wells are included without any limitation that would limit the brine wells to only those used in connection with oil and gas production.
>
> Moreover, throughout the Commission's Rules and Regulations, the term "injection well" does not appear anywhere other than in Chapter 9 and in the Commission's Property Classification Standards. Similarly, "water well" and "disposal well" only appear in these sections. Since injection wells are specifically included for valuation under Chapter 9, do not appear anywhere else in the Commission's Rules and Regulations, and are defined to include brine wells, we find that the Commission's construction and interpretation valuing the

8

brine wells under Chapter 9 was not arbitrary, capricious, or contrary to its rules and regulations.[2] ...

Our second inquiry is to determine whether the evidence supported the Commission's determination that the caverns have no commercial purpose and have a zero-dollar ($0) value. Simply put, the Assessor argues that the void created in the ground as a byproduct of the brine mining constitutes a commercial improvement and thus, has a commercial purpose.

No party has pointed to a Chapter of the Commission's Rules and Regulations that provides for taxation of this type of property. In fact, the Commission's regulations only have one provision that specifically addresses property of this type. Chapter 25 provides a procedure for valuation of "Salt Dome Storage Wells and Caverns permitted as Class II Type 10, 11-L or 11-N." LAC 61:V.2501(H); LAC 61:V.2503. This refers to a specific class designation of the Department of Natural Resources, which requires special permitting, and no evidence adduced indicates that the caverns at issue were permitted as any of these three specific classifications of wells. Contrarily, the undisputed evidence indicates the wells and caverns at issue have only ever been permitted by the Department of Natural Resources for the mining of brine, which does not fall into any of the specific class designations above. Further, a review of the Department of Natural Resources regulations indicates that these types of wells only consist of storage wells. The only commercial use recognized for these caverns in the pertinent regulations is for storage and/or commercial disposal purposes.

A commercial use is one that is connected with or furthers an ongoing profit-making activity; a noncommercial use is one that does not involve the generation of income. See Black's Law Dictionary (11th ed. 2019). ... Further, uncontroverted testimony indicates that "a cavern that's being used for brining is not generating income" based on the existence of the cavern. ...

[C]avern 3 is not permitted and cannot be used for storage. It is, however, being used to return minerals Axiall has extracted from the ground back to the ground. Though it is possible to say that the disposal use of the cavern is connected with Axiall's profit making

---

[2] We note here, as we did in **Axiall, LLC,** ___ So.3d at ___, 2019 WL 7343414 at *2, that Pritchard & Abbott, the consulting firm used by the Assessor in this case, has in the past made recommendations to the Commission regarding changes to its rules and regulations regarding the valuation of brine wells and caverns. According to Pritchard & Abbott's corporate representative Rodney Kret, Pritchard & Abbott suggested that the language in Chapter 9 be clarified such that brine wells and caverns used in brine production should be valued under Chapter 25, rather than Chapter 9. Pritchard & Abbott recommended clarifying that the only injection wells to which Chapter 9 should apply were those applicable to oil and gas production or those oil and gas wells that have been converted from production wells to injector wells for salt water disposal purposes. The recommended changes, which would have made Chapter 25 the Chapter under which brine wells would be assessed, were rejected by the Commission in 2014, and there is no evidence in the record that any changes have since been adopted by the Commission concerning said clarification to Chapter 9.

activity, it may also be easily said that the disposal of minerals back into the ground does not generate income. [Footnotes omitted.]

**Axiall, LLC,** ___ So.3d at ___, 2019 WL 7343414 at *6-7.

In the instant appeal, Blue Cube focuses largely on the Commission's February 21, 2018 decision in the 2016 Tax Appeal, wherein the Commission ruled in favor of Blue Cube as follows:

*A. Brine Wells*

At the outset, the Commission notes that it has consistently valued brine wells under Chapter 9 of the Commission's Rules and Regulations. The Commission hereby reaffirms its previous holdings that brine wells should be valued and assessed pursuant to Chapter 9 of the Commission's Rules and Regulations, which are under the Commission's statutory and constitutional authority to ensure that property is uniformly assessed throughout the State. Importantly, the Commission notes that its interpretation of its own regulations, promulgated pursuant to statutory grants of authority and the procedures of the Louisiana Administrative Procedure Act, should be given deference as a result of the Commission's unique statutory charge to promulgate, interpret, and apply those specific regulations. *See, e.g., Bowers v. Firefighters' Retirement System,* 08-1268, p. 4 (La. 3/17/09), 6 So.3d 173, 176. Further, "[a] reviewing court should afford considerable weight to the Commission's construction and interpretation of its rules and regulations adopted under a statutory scheme that it is entrusted to administer ...." *Forbes v. Cockerham,* 2008-0762, p. 33 (La. 1/21/09), 5 So.3d 839, 859. Moreover, no evidence or testimony was presented to suggest that the cost to build brine wells is any different than oil/gas wells or why brine wells should be valued differently than other wells.

The evidence presented clearly established that the Assessor valued and assessed the subject wells under Chapter 25 of the Commission's Rules and Regulations. This assessment is invalid, incorrect, and an abuse of the Assessor's discretion. Assessors do not have the authority to ignore the Rules and Regulations promulgated by the Commission. Assessor Blanchard's decision to ignore the Commission's Rules and Regulations and its interpretation thereof is a clear abuse of the Assessor's discretion and requires the Commission to examine and correct the assessment. Because the Assessor valued the subject wells under Chapter 25, his valuations are clearly erroneous and must be corrected. Moreover, and remarkably, the Assessor failed to explain or justify *why* the subject brine wells should be valued under Chapter 25 of the Commission's Rules and Regulations. Neither the Assessor himself or any witnesses testified as to the Assessor's valuation and assessment of the subject property. Remarkably, the Assessor appears to rely on the "appraisal" by the consulting/engineering firm of Pritchard & Abbott, but no documentation or testimony was offered to support this "appraisal".

10

The Taxpayer submitted competent and sufficient evidence to establish the correct value of the subject wells under Chapter 9 of the Commission's Rules and Regulations. Specifically, the subject brine wells should be valued at [$139,618.00]. The evidence presented by the Taxpayer regarding the valuation of the wells under Chapter 9 was uncontradicted by the Assessor. Accordingly, the Commission determines that the fair market value of the subject brine wells is [$139,618.00].

*B. Salt Caverns*

In the past, the Commission has evaluated the correctness of the valuation and assessment of salt caverns by their actual and potential commercial use. No testimony or evidence was submitted by the Assessor explaining or justifying his valuation and assessment of the salt caverns. The Commission is therefore left to speculate why and on what basis the Assessor valued and assessed the salt caverns. The Assessor presumably determined that the salt caverns have some commercial use and contain personal property subject to assessment separate and apart from the land. However, no evidence or testimony was presented to support such a proposition. In fact, the Taxpayer presented specific and compelling testimony and evidence clearly establishing that the salt caverns have no separate commercial value separate from the land and are not (and cannot presently be) used to store hydrocarbons. Presently, the caverns have no distinct commercial value apart from the brining operations, nor do they have any value distinct from the land. Moreover, until the process to convert the caverns for the storage of hydrocarbons, etc. is done, they are simply holes in the ground without any inherent additional commercial value. Accordingly, the Commission determines that the caverns have no value separate from the land. Furthermore, the Taxpayer presented testimony and evidence that established that it does not own land at issue, and thus does not own the caverns. The Taxpayer only owns the brine wells and related equipment (i.e. personal property) and has the right to conduct brine mining operations, which naturally causes the formation of the caverns. As such, assuming there were some inherent commercial value to these caverns, which in this matter there is no value, that value would be assessed with the assessment of the land, not personal property. [Footnotes omitted.]

Blue Cube notes that based on the exact same evidence, the Commission "reversed course" in the 2017 Tax Appeal, finding in favor of the Assessor and upholding the Assessor's $9,037,267.00 fair market value of Blue Cube's brine wells and caverns in a decision that was clearly not supported by the testimony or the preponderance of the evidence. We agree.

11

A reviewing court should afford considerable weight to an administrative agency's construction and interpretation of its rules and regulations adopted under a statutory scheme that the agency is entrusted to administer, and its construction and interpretation should control unless the court finds it to be arbitrary, capricious, or manifestly contrary to its rules and regulations. **Rachal, ex rel. Regan v. State, ex rel. Dept. of Health and Hospitals,** 2009-0786 (La. App. 1 Cir. 10/27/09), 29 So.3d 595, 603, writ denied, 2009-2588 (La. 3/5/10), 28 So.3d 1013. An interpretation used by the state administrative agency may be persuasive, but inconsistent interpretation of the overall scheme or use of the wrong rule cannot stand. **Women's and Children's Hosp. v. State, Dept. of Health and Hospitals,** 2007-1157 (La. App. 1 Cir. 2/8/08), 984 So.2d 760, 766, writ granted, 2008-0946 (La. 6/27/08), 983 So.2d 1287, and aff'd, 2008-946 (La. 1/21/09), 2 So.3d 397. If the evidence, as reasonably interpreted, supports the determination of an administrative agency, its orders are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action is arbitrary and capricious. *Id.* Hence, the test for determining whether the action is arbitrary and capricious is whether the action taken is reasonable under the circumstances. Stated differently, the question is whether the action taken was without reason. *Id.*

In the instant case, we have before us only the record evidence stipulated to by the parties at the beginning of the district court's hearing on September 23, 2019. This evidence consisted of the testimony and exhibits previously entered into evidence in the 2016 Tax Appeal, as well as the testimony of Pritchard & Abbott's corporate representative Rodney Kret.

As noted by the Commission in the 2016 Tax Appeal, neither the Assessor himself nor any other witness presented any documentation or testimony as to the Assessor's valuation and assessment of the subject property. Rather, the Assessor

12

simply relied on the unsupported appraisal from Pritchard & Abbott. With regard to the caverns, the Commission found no evidence to support the Assessor's position that the caverns had some commercial use and contained separate personal property subject to assessment separate and apart from the land. In contrast, the Commission found that Blue Cube presented "competent and sufficient evidence to establish the correct value of the subject wells under Chapter 9 of the Commission's Rules and Regulations." Moreover, the Commission found there was "specific and compelling" testimony presented by Blue Cube that the caverns had no commercial value separate from the land and are not and cannot be used to store hydrocarbons. Thus, the Commission determined the caverns had no value.

The fair market value assigned to the brine wells and the caverns by the Assessor and upheld by the Commission, *i.e.*, $9,037,267.00, is contrary to the valuation methodology established by the Commission's Rules and Regulations that provide for valuation and assessment of brine wells under Chapter 9. As previously noted, the parties stipulated that if he had been called to testify in the 2017 Tax Appeal before the Commission, Blue Cube's tax consultant, Charles Zatarain, would have testified that the 2017 fair market value of the brine wells as calculated under Chapter 9 was $196,827.00 and the assessed value was $29,525.00. Moreover, based on the same evidence that was before the Commission in the 2016 Tax Appeal, we agree that the caverns have no distinct commercial value apart from the brining operations, nor do they have any value distinct from the land.

Based on our thorough review of this evidence and our holding in **Axiall, LLC**, we find that the Commission's decision in the 2017 Tax Appeal is arbitrary and capricious and cannot reasonably be supported by the record or sustainable by a preponderance of the evidence. The Commission failed to articulate any basis for its reversal in interpretation of the rules and regulations with regard to valuing

13

the brine wells. In 2016, the brine wells were valued using Chapter 9, but in 2017, Chapter 25 was utilized, resulting in a 4,491 percent increase in the assessed value of Blue Cube's property for the 2017 tax year. As this court held in **Axiall, LLC,** "the Commission's construction and interpretation valuing the brine wells under Chapter 9 was not arbitrary, capricious, or contrary to its rules and regulations." **Axiall, LLC,** ___ So.3d at ___, 2019 WL 7343414 at *6. Thus it follows that based on these facts and circumstances, and given the Commission's unwarranted change in course, the Commission's construction and interpretation valuing the brine wells under Chapter 25 cannot stand.

## DECREE

For the above and foregoing reasons, we reverse the district court's October 17, 2019 judgment affirming the Commission's decision in the 2017 Tax Appeal, and we reverse the assessment as found by the Commission in the 2017 Tax Appeal. We remand the matter to the Commission with instructions that it modify its decision in the 2017 Tax Appeal to adopt the stipulated fair market value of Blue Cube's property as calculated under Chapter 9, *i.e.,* $196,827.00.

Further upon modification of its decision, the Commission shall direct Wayne P. Blanchard, in his official capacity as Assumption Parish Assessor, to prepare a corrected 2017 assessment of Blue Cube's property based on the values as stipulated to by the parties below, *i.e.,* fair market value of $196,827.00 and assessed value of $29,525.00. Thereafter, once an amended 2017 Tax Statement is issued to Blue Cube by Sheriff Falcon, "the appropriate amount of taxes shall be refunded to the taxpayer together with interest [at the actual rate earned on the money paid under protest in the escrow account] during the period from the date of payment until the date of such refund." La. R.S. 47:1998(F).

Appeal costs in the amount of $13,032.00 are assessed against Assumption Parish Assessor Wayne P. Blanchard and the Louisiana Tax Commission, as provided by La. R.S. 13:5112.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**